15-219-ag
*Li v. Lynch*

# In the
# United States Court of Appeals
## for the Second Circuit

AUGUST TERM 2016

No. 15-219-ag

LIANPING LI,
*Petitioner*,

v.

LORETTA E. LYNCH,
UNITED STATES ATTORNEY GENERAL,
*Respondent*.

On Petition for Review of an Order of
the Board of Immigration Appeals

ARGUED: SEPTEMBER 28, 2016
DECIDED: OCTOBER 5, 2016

Before: WINTER, CABRANES, *Circuit Judges*, and RESTANI, *Judge.*[*]

———————

Petitioner Lianping Li, a native and citizen of China, seeks review of a December 29, 2014 order of the Board of Immigration Appeals affirming an August 16, 2013 decision of an Immigration Judge denying Li's application for asylum, withholding of removal, and relief under the Convention Against Torture. On appeal, petitioner argues that the agency erred by (1) relying on written notes from her asylum interview in violation of her due process rights, (2) finding her not credible as to her past persecution, and (3) finding that she had not otherwise established a well-founded fear of future persecution. Because the petitioner has failed to exhaust her first argument regarding the consideration of the asylum notes, we decline to review the issue. Further, we find that although the underlying analysis of the agency contained certain errors, its ultimate ruling is supported by substantial evidence and the same decision would be made on remand.

Accordingly, the petition for review is **DENIED**. As we have completed our review, any stay of removal that the Court previously granted in this petition is **VACATED**, and any pending motion for a stay of removal in this petition is **DISMISSED** as moot.

———————

[*] Judge Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

GARY J. YERMAN, New York, N.Y., *for Petitioner*.

THANKFUL T. VANDERSTAR, Attorney, Office of Immigration Litigation (Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Civil Division; Linda S. Wernery, Assistant Director, *on the brief*), U.S Department of Justice, Washington, D.C., *for Respondent*.

PER CURIAM:

Petitioner Lianping Li seeks review of an order of Immigration Judge ("IJ") Aviva L. Poczter denying her application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). The Board of Immigration Appeals ("BIA") issued a decision affirming the IJ. *In re Lianping Li*, No. A205 429 346 (B.I.A. Dec. 29, 2014), *aff'g* No. A205 429 346 (Immig. Ct. N.Y. City Aug. 16, 2013). On appeal, Li argues that the BIA and IJ erred by (1) relying on written notes from her asylum interview in violation of her due process rights, (2) finding her not credible as to her past persecution, and (3) finding that she had not established a well-founded fear of future persecution. We disagree and, accordingly, **DENY** the petition for review.

3

# BACKGROUND

Petitioner is a native and citizen of the People's Republic of China who entered the United States on July 30, 2002 as a nonimmigrant visitor with authorization to remain until January 29, 2003. Li remained in the United States without authorization and filed an application for asylum, withholding of removal, and CAT protection on May 7, 2012.

Li's asylum application alleges the following. In 1996, Li became pregnant with her second child in violation of China's family planning policy. Though she went into hiding, family planning officials caught, detained, and beat her husband. Concerned for his safety, Li turned herself in. Chinese officials then forced Li to immediately undergo a forced abortion and subsequently levied a heavy fine on both Li and her husband. Her husband died in 1997 as a result of the beatings. Li then fled to the United States in 2002 where, in late 2011, she became involved with the China Democracy Party ("CDP") by "participating in many protests and propaganda activities." The application notes that Li "suffered many telephonic interruptions" and threats from "the communist party's spies."

An asylum officer conducted a credible fear interview with Li on June 14, 2012. The Department of Homeland Security ("DHS") commenced removal proceedings against the petitioner the next day for overstaying her visa. At a hearing before the IJ on August 2, 2012, Li conceded removability and proceeded with her asylum application.

4

The IJ admitted Li's asylum application into evidence at a hearing on August 9, 2013, during which Li testified in support of her application. Among other things, Li testified that after she had attended protests and published articles on the CDP website in her own name, she received three phone calls from representatives of the "Wenzhou People's Association" who "threatened [her], and told [her] not to join the Democracy Party because it would not be permitted by the Chinese government." During the hearing, the Government confronted Li with notes taken by the asylum officer during her credible fear interview. Li's counsel did not object to the admittance of these notes into evidence.

On August 16, 2013, the IJ issued an oral decision finding Li removable and denying her application for asylum, withholding of removal, and CAT relief. In particular, the IJ found Li lacking in credibility based on several discrepancies in the evidence submitted. Specifically, Li provided varying accounts of (1) whether she was detained before her forced abortion; (2) when her husband was released from custody; (3) the timeline of her forced abortion; (4) whether she was forced to wear an intrauterine device ("IUD"); and (5) the amount of money she and her husband were allegedly fined as a result of her unauthorized pregnancy. The IJ found that Li's credibility issue "ble[d] over from [her] family planning claim into the CDP claim."

The IJ also found that Li failed to establish a well-founded fear of future persecution resulting from her CDP activities. First, the IJ found no evidence indicating that Chinese officials were aware of

5

Li's activities in the United States. Li only presented her testimony that she received the three phone calls from the Wenzhou People's Association. Yet, as the IJ noted, Li admitted no harm ever came to her after receiving those phone calls. Second, the IJ further reasoned that "according to the respondent's own testimony, the Chinese authorities know that the respondent joined the CDP, knows where respondent is located, has the ability to contact her, and yet has not taken any action against her or her family in China in the period of over a year since the calls were received," which "undercuts the respondent's claim that the Chinese government has any interest whatsoever in harming her or her family." Lastly, the IJ found no pattern or practice of persecution against CDP members in China similarly situated to Li.

On December 29, 2014, the BIA affirmed the IJ's determination, finding (1) no clear error in the IJ's determination that Li did not testify credibly about her past persecution resulting from China's family planning policies; and (2) that the IJ correctly determined that Li failed to demonstrate a well-founded fear of future persecution based on her CDP activities. The BIA did not rely on the IJ's adverse credibility determination to rule on Li's future persecution claim.

## DISCUSSION

Ordinarily, we review only the BIA's decision on a petition for review. *See Yang v. U.S. Dep't of Justice*, 426 F.3d 520, 522 (2d Cir. 2005). Under the circumstances of this case, we review the IJ's decision as modified by the BIA. *See id.*

6

We first address Li's argument regarding the agency's consideration of her asylum officer's handwritten notes. We then turn to her challenge to the agency's adverse credibility determination regarding her past persecution. Lastly, we address Li's contention that the agency erred in its determination that she had not established a well-founded fear of future persecution.

## I. Asylum Officer Notes

In her petition for review, Li argues for the first time that the agency's reliance on the notes of her credible fear interview violated her due process rights. The Government challenges this argument as unexhausted.

The Court may only review a final order of removal if "the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). "[W]hen an applicant for asylum or withholding of removal has failed to exhaust an issue before the BIA, and that issue is, therefore, not addressed in a reasoned BIA decision, we are, by virtue of the 'final order' requirement of § 1252(d)(1), usually unable to review the argument." *Zhong v. U.S. Dep't of Justice*, 480 F.3d 104, 122 (2d Cir. 2007). Although not jurisdictional, issue exhaustion is mandatory and hence waivable by the Government. *See id.* at 121–23.

Li did not object to the introduction of the credible fear interview notes at her merits hearing and did not make a due process argument in her brief to the BIA. Because the Government challenges

7

the due process argument as unexhausted, we accordingly decline to review it.

## II. Past Persecution: Adverse Credibility

Li next challenges the IJ and BIA's adverse credibility finding on two grounds. First, she argues that the IJ and BIA incorrectly found that she testified inconsistently regarding the amount of money she was fined by Chinese family planning officials. Second, she contends that omissions from her written asylum application cannot be used to undermine her credibility.

The REAL ID Act directs the agency to make credibility determinations in asylum proceedings based on the "totality of the circumstances" and "all relevant factors." 8 U.S.C. § 1158(b)(1)(B)(iii). Among the factors bearing on credibility listed in the statute are "demeanor, candor, or responsiveness," the plausibility of the petitioner's account, and inconsistencies in the applicant's statements, "without regard to whether" they go "to the heart of the applicant's claim." *Id.* We review the agency's factual findings, including adverse credibility determinations, under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 165 (2d Cir. 2008). We afford "particular deference" to an IJ's credibility determinations and defer to them "unless, from the totality of the circumstances, it is plain that no reasonable fact-finder

could make such an adverse credibility ruling." *Id.* at 166–67 (internal quotation marks omitted).

When an IJ or BIA decision contains errors, "we may nevertheless deem remand futile and deny the petition for review if (1) substantial evidence in the record relied on by the IJ, considered in the aggregate, supports the IJ's finding that petitioner lacked credibility, and (2) disregarding those aspects of the IJ's reasoning that are tainted by error, we can state with confidence that the IJ would adhere to his decision were the petition remanded." *Siewe v. Gonzales*, 480 F.3d 160, 166–67 (2d Cir. 2007) (internal quotation marks omitted); *see also Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 338–39 (2d Cir. 2006) (discussing the role of futility within the substantial evidence standard). The "overarching test" to deem a remand futile "is when the reviewing court can confidently predict that the agency would reach the same decision absent the errors that were made." *Id.* at 339 (internal quotation marks omitted). To determine whether remand would be futile, a reviewing court "should assess the entire record and determine whether, based on the strength of the evidence supporting the error-free findings and the significance of those findings, it is clear that the agency would adhere to its decision were the petition remanded." *Id.* Accordingly, while we may remand, we readily retain our ability to affirm an IJ's factual findings despite error. *See id.*

We agree with Li that the IJ and BIA erred in finding that she testified inconsistently regarding the amount of money she was fined by Chinese family planning officials. During her merits hearing, Li

testified that she had paid 10,000 renminbi ("RMB") and still owed more than 10,000 RMB. She then clarified that the total amount of the fine was 30,000 to 40,000 RMB. Similarly, the credible fear interview notes reflect Li stating that she had paid 10,000 of a 30,000 RMB fine. Li's ambiguous testimony is thus plainly consistent with the asylum officer's notes.

Nonetheless, applying the well-established standard of substantial evidence to the facts of this case, we find that although the underlying analysis of the IJ and BIA contained this error, the agency's ultimate ruling—that the petitioner failed to provide a credible account of past persecution and thus failed to satisfy her burden of proof—is supported by substantial evidence and it is clear that the same decision would be made on remand. The agency cited many far more significant inconsistencies among Li's testimony, written application, and credible fear interview, including several related to the timing of her forced abortion, the detention of her husband, and her forced use of an IUD. Given these numerous and important inconsistencies, we are confident that remand would be futile.

Li's additional argument that her omissions cannot be used to determine her credibility is meritless. While it is true, as Li states, that "asylum applicants are not required to list every incident of persecution on their I-589 statements," *Pavlova v. INS*, 441 F.3d 82, 90 (2d Cir. 2006), her asylum application did not simply omit incidents of persecution. Rather, her application described the same incidents of persecution differently.

### III. Future Persecution

Lastly, we turn to Li's contention that she has established a well-founded fear of future persecution resulting from her CDP activities. To establish asylum eligibility based on future persecution, an applicant must show that he or she subjectively fears persecution and that this fear is objectively reasonable. *Ramsameachire v. Ashcroft*, 357 F.3d 169, 178 (2d Cir. 2004). The objective component requires the alien to "make some showing that authorities in [her] country of nationality are either aware of [her] activities or likely to become aware of [her] activities." *Hongsheng Leng v. Mukasey*, 528 F.3d 135, 143 (2d Cir. 2008). Moreover, an asylum applicant need not provide evidence that there is a reasonable possibility she will be singled out for persecution if she "establishes that there is a pattern or practice in his or her country of nationality . . . of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 1208.13(b)(2)(iii)(A).

We discern no error in the agency's conclusion that Li failed to show that her fear of future persecution resulting from her activities with the CDP was objectively reasonable. Li only testified that after she had attended protests and published articles on the CDP website in her own name, she received three threatening phone calls from representatives of the Wenzhou People's Association. Li gave no further details about these phone calls. The agency was thus justified in finding that, absent more "solid support in the record" of an

11

identifiable threat, Li's fear of future persecution was "speculative at best." *See Jian Xing Huang v. INS*, 421 F.3d 125, 129 (2d Cir. 2005).

The agency also reasonably rejected Li's claim that China has a pattern or practice of persecuting those similarly situated to her: returning Chinese citizens who joined the CDP in the United States. *See* 8 C.F.R. § 1208.13(b)(2)(iii)(A). Li's application referred to CDP members being arrested on their return to China, but she presented no corroboration for that statement. Moreover, the 2012 State Department Human Rights Report, cited by Li on appeal, describes China's punishment of several domestic political dissidents, none of whom were similarly situated to Li.

Li argues that the agency incorrectly determined that the fact that her family in China remained unharmed undermined her fear of future persecution. Li contends that while a claim of future persecution may be undercut by evidence that similarly situated family members remain unharmed in their native country, *see Melgar de Torres v. Reno*, 191 F.3d 307, 313 (2d Cir. 1999), she never testified that her family has joined the CDP or is otherwise politically active. While we agree that the agency inappropriately relied on this fact, remand would be futile given the dearth of evidentiary support for an identifiable threat of future persecution. *See Siewe*, 480 F.3d at 166–67.

## CONCLUSION

We have reviewed the other arguments raised by Li on appeal and find them to be without merit. For the reasons stated above, the

petition for review is **DENIED.** As we have completed our review, any stay of removal that the Court previously granted in this petition is **VACATED**, and any pending motion for a stay of removal in this petition is **DISMISSED** as moot.