16-2262-ag, 16-2493-ag
*Gao v. Sessions, Shao v. Sessions*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2017

(Argued: December 11, 2017     Decided: May 25, 2018)

Docket Nos. 16-2262-ag, 16-2493-ag

HONG FEI GAO, AKA Xue Liang Zhang,

*Petitioner*,

*v.*

JEFFERSON B. SESSIONS III, United States Attorney General,

*Respondent.*[*]

HAO SHAO,

*Petitioner*,

*v.*

JEFFERSON B. SESSIONS III, United States Attorney General,

*Respondent.*[*]

---

[*]     Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Jefferson B. Sessions III is substituted for former Attorney General Loretta E. Lynch as respondent.

Before:

WINTER and CHIN, *Circuit Judges*, and KORMAN, *Judge.**

Petitions for review heard in tandem from decisions of the Board of Immigration Appeals affirming the decisions of Immigration Judges denying petitioners asylum and related relief on adverse credibility grounds. During removal proceedings, petitioners testified to certain details about their experiences that they had not included in their initial applications and supporting documents. The Immigration Judges relied substantially on these omissions in finding petitioners not credible.

PETITIONS GRANTED.

> MONA LIZA FABULAR LAO, New York, New York, *for Petitioner Gao*.
>
> JOSHUA E. BARDAVID, Law Office of Joshua E. Bardavid, New York, New York, *for Petitioner Shao*.
>
> BRETT F. KINNEY and JESSE LLOYD BUSEN, Trial Attorneys, Jeffery R. Leist, Senior Litigation

---

* Edward R. Korman, of the United States District Court for the Eastern District of New York, sitting by designation.

Counsel, Holly M. Smith, Senior Litigation Counsel, Laura M. Cover, Law Clerk, *for* Chad A. Readler, Acting Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C., *for Respondent.*

CHIN, *Circuit Judge*:

These petitions for review heard in tandem challenge two decisions of the Board of Immigration Appeals (the "BIA"), affirming decisions by two Immigration Judges ("IJs"), denying asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") to two petitioners seeking relief from religious persecution in China on adverse credibility grounds. During removal proceedings, petitioners testified regarding the medical attention they received for injuries they sustained from police beatings. The IJs and the BIA relied substantially on the omission of that information from petitioners' initial applications and supporting documents to determine that petitioners lacked credibility.

On appeal, petitioners principally challenge the agency's adverse credibility determinations. In light of the totality of the circumstances and in the context of the record as a whole, in each case we conclude that the IJ and BIA erred in substantially relying on certain omissions in the record. Accordingly,

we grant the petitions, vacate the decisions of the BIA, and remand the cases to the BIA for further proceedings consistent with this opinion.

## BACKGROUND

We summarize the facts and procedural history of each case separately, as follows:

**I.** *Hong Fei Gao*

Around April 2010, Gao, a native and citizen of China, entered the United States without inspection. In September 2010, Gao applied for asylum, withholding of removal, and protection under the CAT.

In his application, which included a short personal statement in Chinese, Gao explained that in February 2009, influenced by his mother, he began practicing Christianity in China. In November 2009, while he was praying at a friend's house with other church members, the police broke into the house and arrested Gao and his friends. Gao was brought to the police station and was detained for ten days, during which he was repeatedly interrogated and beaten. His family spent money and relied on connections to secure Gao's release, and the police required Gao to sign a letter promising not to attend church activities anymore. After his release and before he recovered from his detention, Gao was

fired from his restaurant job. He left China in March 2010 and continued to practice Christianity in the United States. The statement did not provide any description of any medical treatment.

In December 2010, Gao was served with a notice to appear in removal proceedings. Through counsel, Gao conceded removability.

On September 12, 2014, following a hearing on September 27, 2012, the IJ (Loprest, *IJ*) issued written orders denying Gao's application for asylum, withholding of removal, and protection under the CAT, and ordered Gao removed to China. The IJ denied relief principally on adverse credibility grounds.[1] The IJ cited the following "evidentiary shortcomings that might not undermine [Gao's] case individually, but when considered cumulatively," led the IJ to conclude that Gao lacked credibility, Gao Cert. Admin. R. 64:

- Gao testified that he was interrogated by police four times and was beaten during those interrogations, but his application omitted the number of interrogations and the fact that his injuries required medical attention.[2]

---

[1] The IJ also denied Gao's asylum application on the ground that it was not timely. Because the BIA declined to address that ground, the timeliness of Gao's application is not before us on appeal.

[2] In fact, the application stated that "[the police] interrogated me several times." Gao Cert. Admin. R. 302.

- Gao testified that he was beaten and visited a clinic, but Gao's mother's letter did not mention that Gao was physically injured or that she and Gao's father took him to a clinic. Instead, her letter stated that she was "afraid that [he] would be beaten by the police." *Id.* at 251.

- Gao could not explain why his Chinese birth certificate and a letter from his underground church used identical photographs.

- Gao could not explain how he traveled under an electronic airline ticket in his real name while simultaneously using a fraudulent passport.

- Gao lacked candor and responsiveness, as he responded to questions vaguely, asked for many questions to be repeated, and paused for a long time before answering.

Gao failed to explain the inconsistencies and omissions to the IJ's satisfaction. The IJ was not persuaded by Gao's explanation that he did not know why his mother failed to mention the clinic visit in her letter. The IJ noted that he reached the adverse credibility determination "with some reluctance" as "the documentary record appears to corroborate certain aspects of Gao's claim," citing letters, photographs, and statements relating to Gao's mistreatment in

China and his practice of Christianity in the United States, as well as U.S. Department of State reports on religious persecution in China. *Id.* at 64.

On June 6, 2016, the BIA affirmed the IJ's decision and dismissed Gao's appeal, finding no clear error in the IJ's determination that Gao lacked credibility. *In re Hong Fei Gao*, No. A200 922 341 (B.I.A. June 6, 2016), *aff'g* No. A200 922 341 (Immig. Ct. N.Y. City Sep. 12, 2014). Although it noted that some of the IJ's findings did not support an adverse credibility determination, citing one example of the discrepancy relating to the number of interrogations, the BIA upheld the adverse credibility determination based on two omissions: (1) the omission in Gao's mother's letter of the facts that he was physically injured and that his parents took him to a clinic, and (2) the omission in Gao's asylum application of the fact that he required medical treatment and the extent of his mistreatment. After considering Gao's proffered explanations -- he did not know why his mother failed to mention his medical treatment, he did not request that her letter include all details about what happened after his release, and he could not produce a receipt because the clinic did not give him one -- the BIA found no error in the IJ's conclusion that Gao did not reasonably explain the omissions.

On appeal, Gao challenges the adverse credibility determination, arguing that his testimony was not inconsistent with his asylum application or his mother's letter. He contends that the omissions were minor, collateral, and insufficient to support an adverse credibility determination.

## II.  *Hao Shao*

Around September 2010, Shao, a native and citizen of China, entered the United States without inspection. In May 2011, Shao applied for asylum, withholding of removal, and protection under the CAT.

In his updated application, Shao explained that he began practicing Christianity in January 2003 through a neighbor's influence and he was baptized in October 2005. One night in April 2010, while he was gathered with other Christians at someone else's house, the police broke into the house, confiscated their religious texts, and arrested Shao and others. Shao was brought to the police station, interrogated, and severely beaten. He was detained for eleven days and interrogated two more times, but as he testified during immigration proceedings, he was not physically injured the other two times. Shao's application further explained that his family spent money to secure his release, and the police required Shao to report to the station twice a month and sign a

letter promising not to participate in the underground church anymore. Shao was later dismissed by his employer and was regularly monitored by police. He left China in August 2010 and continued to practice Christianity in the United States. Shao's application did not provide any description of his medical treatment, other than to say that "[a]fter I returned home, my mother salved my wounds with tear[s]." Shao Cert. Admin. R. 423.

In July 2011, Shao was served with a notice to appear in removal proceedings. Through counsel, Shao conceded removability.

On June 24, 2015, following a hearing, the IJ (Cheng, *IJ*) denied by oral decision and written order Shao's application for asylum, withholding of removal, and protection under the CAT, and ordered Shao removed to China. The IJ denied relief principally on adverse credibility grounds. The IJ noted that the following "serious concerns about [Shao's] credibility" warranted an adverse credibility determination, Shao Cert. Admin. R. 74:

- Shao lacked responsiveness and his demeanor "changed dramatically" when discussing how many times he reported to the police. *Id.* at 74.

- Shao testified that he sustained injuries from the police beating, his parents took him to a local village clinic for treatment, his mother helped him apply "medical liquid" to his wounds, he went to the clinic for a follow-up visit, and it took one month for him to recover, but he omitted these facts from his application.

- Shao's father's letter did not mention that Shao's parents took him to a clinic or that his mother helped apply "medical liquid" to his wounds.

- Shao vacillated regarding how many times he reported to the police -- he answered "five times, wait, 15 times, seven times," and after an approximately ten-second pause, finally "seven times." *Id.* at 142.

- Shao offered two different dates -- September 1 and September 4, 2010 -- for when he contacted his cousin in the United States.

- The letter Shao submitted from his church's pastor did not mention his arrest, even though the pastor was aware of it.

After giving Shao "ample opportunity to reconcile these inconsistencies," the IJ concluded that Shao's explanations were "neither plausible nor reasonable." *Id.* at 78. The IJ was not persuaded by Shao's explanations that he did not mention the medical treatment because it was a

minor detail akin to picking up medicine at a drug store; he had difficulty stating the number of times he reported to the police, because he did not keep exact count; and he only submitted the church letter as proof of membership. Finally, relying on her credibility determination, the IJ determined that Shao failed to establish past persecution or a well-founded fear of persecution.

On June 27, 2016, the BIA affirmed the IJ's decision denying relief and dismissed Shao's appeal, finding no clear error in the IJ's determination that Shao lacked credibility. *In re Hao Shao*, No. A200 168 340 (B.I.A. June 27, 2016), *aff'g* No. No. A200 168 340 (Immig. Ct. N.Y. City June 24, 2015). The BIA upheld the adverse credibility determination based on three omissions and inconsistencies: (1) omissions regarding Shao's medical treatment from his asylum application and his father's letter; (2) the inconsistent testimony Shao offered on the number of times he reported to the police; and (3) the omission of Shao's arrest in the pastor's letter. The BIA was not persuaded by Shao's arguments that he did not believe the clinic treatment was important enough to include in his application; he did not know why his father omitted mention of his medical treatment and his father mainly discussed his arrest, where the letter was "otherwise detailed," Shao Cert. Admin. R. 4; he did not keep exact count of

- 11 -

the number of times he reported to the police; and the pastor's letter was only a certificate intended to confirm his membership. The BIA also affirmed the IJ's determinations that Shao failed to establish past persecution or a well-founded fear of persecution.

On appeal, Shao challenges the adverse credibility determination, contending that the agency erred in relying on minor inconsistencies when the record as a whole corroborates his claim. He also contends that the IJ failed to conduct the required individualized analysis when it concluded that Shao failed to establish a well-founded fear of persecution.

*DISCUSSION*

**I.** *Applicable Law*

**A.** *Statutory Framework*

"Asylum is a discretionary form of relief that hinges on persecution in the applicant's country of nationality." *Delgado v. Mukasey*, 508 F.3d 702, 705 (2d Cir. 2007). To be eligible for asylum, a petitioner must establish that he or she is a "refugee," 8 U.S.C. § 1158(b)(1)(B)(i), that is, a person who is unable or unwilling to return to his or her country of nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality,

membership in a particular social group, or political opinion," 8 U.S.C. § 1101(a)(42)(A). Asylum based on past persecution is "reserved for persecuted aliens whose persecution was particularly severe or who may suffer 'other serious harm' if removed." *Kone v. Holder*, 596 F.3d 141, 146 (2d Cir. 2010) (quoting 8 C.F.R. § 1208.13(b)(1)(iii)). Asylum based on a well-founded fear of persecution "requires a subjective fear that is objectively reasonable." *Huo Qiang Chen v. Holder*, 773 F.3d 396, 404 (2d Cir. 2014).

Withholding of removal is a mandatory form of relief that requires a petitioner to demonstrate "a clear probability of future persecution on account of a protected characteristic." *Kone*, 596 F.3d at 147; *see* 8 U.S.C. § 1231(b)(3)(A) (alien may not be removed if "the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion"). A petitioner's burden of proof for withholding of removal is higher than his or her burden of proof for asylum. *Vanegas-Ramirez v. Holder*, 768 F.3d 226, 237 (2d Cir. 2014).

Protection under the CAT is also a mandatory form of relief and requires an applicant to "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Kone*, 596

F.3d at 147 (quoting 8 C.F.R. § 1208.16(c)(2)).  "Unlike asylum and withholding of removal, 'CAT relief does not require a nexus to a protected ground.'"  *Id.* (quoting *Delgado*, 508 F.3d at 708).

Where the same factual predicate underlies a petitioner's claims for asylum, withholding of removal, and protection under the CAT, an adverse credibility determination forecloses all three forms of relief.  *See Paul v. Gonzales*, 444 F.3d 148, 156-57 (2d Cir. 2006).

**B.**     *Standards of Review*

"When the BIA agrees with an IJ's adverse credibility determination and adopts particular parts of the IJ's reasoning, we review the decisions of both the BIA and the IJ."  *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 166 (2d Cir. 2008) (per curiam).  Our review of the IJ's decision "includ[es] the portions not explicitly discussed by the BIA," *Guan v. Gonzales*, 432 F.3d 391, 394 (2d Cir. 2005) (per curiam), but not those grounds explicitly rejected by the BIA, *see Xue Hong Yang v. U.S. Dep't of Justice*, 426 F.3d 520, 522 (2d Cir. 2005) ("[W]e review the judgment of the IJ as modified by the BIA's decision -- that is, minus the single argument for denying relief that was rejected by the BIA.").

We review *de novo* questions of law and the application of law to fact. *Kone*, 596 F.3d at 146. We review the agency's factual findings, including adverse credibility findings, under the substantial evidence standard, "which requires that they be supported by 'reasonable, substantial and probative evidence in the record when considered as a whole.'" *Id.* (quoting *Iouri v. Ashcroft*, 487 F.3d 76, 81 (2d Cir. 2007)). We treat factual findings as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see Majidi v. Gonzales*, 430 F.3d 77, 80 (2d Cir. 2005) ("A petitioner must do more than offer a plausible explanation for his inconsistent statements to secure relief; he must demonstrate that a reasonable fact-finder would be *compelled* to credit his testimony." (internal quotation marks and citation omitted)).

"We defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Xiu Xia Lin*, 534 F.3d at 167. Although we afford particular deference to the IJ's adverse credibility determination, "the fact that an IJ 'has relied primarily on credibility grounds in dismissing an asylum application cannot insulate the decision from review.'" *Xiao Ji Chen v. U.S. Dep't*

*of Justice*, 471 F.3d 315, 335 (2d Cir. 2006) (quoting *Ramsameachire v. Ashcroft*, 357 F.3d 169, 178 (2d Cir. 2004)).  We must assess whether the agency has provided "specific, cogent reasons for the adverse credibility finding and whether those reasons bear a legitimate nexus to the finding."  *Xiu Xia Lin*, 534 F.3d at 166 (quoting *Zhou Yun Zhang v. INS*, 386 F.3d 66, 74 (2d Cir. 2004)).

Where an IJ relies on erroneous bases to reach an adverse credibility determination, and "we cannot confidently predict that the IJ would reach the same conclusion in the absence of these deficiencies, the IJ's adverse credibility determination cannot stand."  *Pavlova v. INS*, 441 F.3d 82, 88 (2d Cir. 2006); *see also Kone*, 596 F.3d at 151 ("Because we cannot confidently predict that absent these errors the IJ would have adhered to its [adverse credibility] determination, a remand is warranted." (footnote omitted)).

C.     *Omissions and Inconsistencies*

For cases filed after May 11, 2005, the effective date of the REAL ID Act, Pub L. No. 109-13, 119 Stat. 231 (2005), "an IJ may rely on *any* inconsistency or omission in making an adverse credibility determination as long as the 'totality of the circumstances' establishes that an asylum applicant is not credible," *Xiu Xia Lin*, 534 F.3d at 167 (quoting 8 U.S.C. § 1158(b)(1)(B)(iii)).  The

agency may base a credibility finding on an asylum applicant's "demeanor, candor, or responsiveness"; the "inherent plausibility" of his account; the consistency among his written statements, oral statements, and other record evidence; and "any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor." 8 U.S.C. § 1158(b)(1)(B)(iii). Even where the agency "relies on discrepancies or lacunae that, if taken separately, concern matters collateral or ancillary to the claim, the cumulative effect may nevertheless be deemed consequential." *Xiu Xia Lin*, 534 F.3d at 167 (quoting *Tu Lin v. Gonzales*, 446 F.3d 395, 402 (2d Cir. 2006)). To resolve the instant appeals, we first clarify the following principles that govern credibility determinations based on omissions following the REAL ID Act.

First, although the REAL ID Act authorizes an IJ to rely on "*any* inconsistency or omission in making an adverse credibility determination," even one "collateral or ancillary" to an applicant's claims, *id.* at 167, the Act does not give an IJ free rein. The REAL ID Act does not erase our obligation to assess whether the agency has provided "specific, cogent reasons for the adverse credibility finding and whether those reasons bear a legitimate nexus to the

- 17 -

finding." *Id.* at 166 (quoting *Zhou Yun Zhang*, 386 F.3d at 74); *accord Shrestha v. Holder*, 590 F.3d 1034, 1042 (9th Cir. 2010) ("The REAL ID Act did not strip us of our ability to rely on the institutional tools that we have developed, such as the requirement that an agency provide specific and cogent reasons supporting an adverse credibility determination, to aid our review."). Thus, although IJs may rely on non-material omissions and inconsistencies, not all omissions and inconsistencies will deserve the same weight. A trivial inconsistency or omission that has no tendency to suggest a petitioner fabricated his or her claim will not support an adverse credibility determination. *See Latifi v. Gonzales*, 430 F.3d 103, 105 (2d Cir. 2005) (per curiam) (remanding where we found "any potential discrepancies that might exist to be far from 'significant and numerous,' but rather insignificant and trivial"); *accord Shrestha*, 590 F.3d at 1044 (noting that "trivial inconsistencies that under the total circumstances have no bearing on a petitioner's veracity should not form the basis of an adverse credibility determination"); *Kadia v. Gonzales*, 501 F.3d 817, 821 (7th Cir. 2007) (faulting IJ for "fail[ing] to distinguish between material lies, on the one hand, and innocent

mistakes, trivial inconsistencies, and harmless exaggerations, on the other hand").[3]

Second, although "[a] lacuna in an applicant's testimony or omission in a document submitted to corroborate the applicant's testimony . . . can serve as a proper basis for an adverse credibility determination," *Xiu Xia Lin*, 534 F.3d at 166 n.3, we also recognize that "asylum applicants are not required to list every incident of persecution on their I–589 statement," *Lianping Li v. Lynch*, 839 F.3d 144, 150 (2d Cir. 2016) (per curiam) (quoting *Pavlova*, 441 F.3d at 90); *see also Secaida-Rosales v. INS*, 331 F.3d 297, 308 (2d Cir. 2003) (noting that an applicant's "failure to list in his or her initial application facts that emerge later in testimony will not automatically provide a sufficient basis for an adverse credibility finding"), *superseded by statute on other grounds as recognized in Xiu Xia Lin*, 534 F.3d at 167; *accord Pop v. INS*, 270 F.3d 527, 531-32 (7th Cir. 2001) ("We hesitate to find that one seeking asylum must state in his or her application every incident of persecution lest the applicant have his or her credibility questioned if the

---

[3]     An example of a trivial inconsistency that is entitled to little if any weight is the difference between Gao's hearing testimony that he was interrogated by the police "four times" and his application statement that he was interrogated "several times." The BIA correctly held that this "discrepancy" did not support an adverse credibility determination. Likewise, the difference between September 1, 2010 and September 4, 2010 as the date when Shao contacted his cousin is a trivial discrepancy.

- 19 -

incident is later elicited in direct testimony."); *Abulashvili v. Attorney Gen. of U.S.*, 663 F.3d 197, 206 (3d Cir. 2011). Because of this tension, although we have noted in dictum that an inconsistency and an omission are "functionally equivalent" for adverse credibility purposes, *Xiu Xia Lin*, 534 F.3d at 166 n.3, in general "omissions are less probative of credibility than inconsistencies created by direct contradictions in evidence and testimony," *Lai v. Holder*, 773 F.3d 966, 971 (9th Cir. 2014). *Cf. Lianping Li*, 839 F.3d at 150 (upholding adverse credibility determination where petitioner's "asylum application did not simply omit incidents of persecution. . . . [but rather] described the same incidents of persecution differently").

Although the federal evidentiary rules do not apply in immigration proceedings, *Aslam v. Mukasey*, 537 F.3d 110, 114 (2d Cir. 2008) (per curiam), it is nonetheless instructive to analogize the use of omissions in adverse credibility determinations to the use of a witness's prior silence for impeachment. In the latter context, we have indicated that "[w]here the belatedly recollected facts merely augment that which was originally described, the prior silence is often simply too ambiguous to have any probative force, and accordingly is not sufficiently inconsistent to be admitted for purposes of impeachment." *United*

*States v. Leonardi*, 623 F.2d 746, 756 (2d Cir. 1980) (citation omitted). In addition, the probative value of a witness's prior silence on particular facts depends on whether those facts are ones the witness would reasonably have been expected to disclose. *See Jenkins v. Anderson*, 447 U.S. 231, 239 (1980) ("Common law traditionally has allowed witnesses to be impeached by their previous failure to state a fact in circumstances in which *that fact naturally would have been asserted*." (emphasis added)). In the immigration context, in assessing the probative value of the omission of certain facts, an IJ should consider whether those facts are ones that a credible petitioner would reasonably have been expected to disclose under the relevant circumstances.

Finally, the REAL ID Act requires IJs to evaluate each inconsistency or omission in light of the "totality of the circumstances, and all relevant factors," 8 U.S.C. § 1158(b)(1)(B)(iii). That requirement is consistent with our well-established rule that review of an agency's adverse credibility determination "is conducted on the record as a whole." *Tu Lin*, 446 F.3d at 402; *see also Xiu Xia Lin*, 534 F.3d at 167 (an applicant's testimony must be considered "in light of . . . the manner in which it hangs together with other evidence" (citation omitted)); *accord Shrestha*, 590 F.3d at 1040 ("[T]he totality of the circumstances approach also

- 21 -

imposes the requirement that an IJ not cherry pick solely facts favoring an adverse credibility determination while ignoring facts that undermine that result."). Thus, "an applicant's testimonial discrepancies -- and, at times, even outright lies -- must be weighed in light of their significance to the total context of his or her claim of persecution." *Zhong v. U.S. Dep't of Justice*, 480 F.3d 104, 127 (2d Cir. 2007). An IJ must also "'engage or evaluate' an asylum applicant's explanations for apparent inconsistencies in the record." *Diallo v. Gonzales*, 445 F.3d 624, 629 (2d Cir. 2006) (quoting *Latifi*, 430 F.3d at 105); *see also Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 403 (2d Cir. 2005) ("Absent a reasoned evaluation of [petitioner's] explanations, the IJ's conclusion that his story is implausible was based on flawed reasoning and, therefore, cannot constitute substantial evidence supporting her conclusion.").

## II.   *Application*

In light of the foregoing principles, we conclude that in both cases, the IJs and the BIA erred by substantially relying on certain inconsistencies and omissions that had no tendency to show that petitioners fabricated their claims when considered in light of the totality of the circumstances and in the context of the record as a whole. Because we cannot confidently predict that the IJs would

have adhered to their adverse credibility determinations absent these erroneous bases, we remand for further evaluation.

### A. *Omissions Regarding Medical Treatment*

In both cases, the agency relied on the omission from petitioners' initial applications of discussion of their medical treatment for their injuries after their release from custody. Although the fact that petitioners visited clinics for medical treatment may be probative of the degree of harm they suffered, the omissions of these details from petitioners' initial applications did not warrant the heavy weight afforded to them by the IJs and the BIA.

First, Gao's and Shao's testimony regarding medical treatment was not *inconsistent* with their initial accounts. The information was supplementary, not contradictory: that their beatings warranted medical attention reinforces their claims of persecution. *See Lai*, 773 F.3d at 974 ("This is not a case where contradictory or even impeaching information came out; rather, it was information consistent with [the applicant's] own claimed experiences that would have helped his claim had he brought it out himself."). Here, the IJs erred to the extent that they characterized these omissions as inconsistencies. *See* Shao Cert. Admin. R. 75 (characterizing Shao's failure to mention that he visited a

clinic as a "troubling significant inconsistency"); Gao Cert. Admin. R. 65 (characterizing Gao's mother's letter's failure to mention that she took Gao to a clinic as an "inconsistenc[y]").

Second, although we would not necessarily characterize these omissions as trivial or minor, we are not convinced that the omissions were as serious as the IJs suggested. We have recognized that "asylum applicants are not required to list every incident of persecution on their I–589 statement." *Lianping Li*, 839 F.3d at 150. By logical extension, nor are asylum applicants required to list every incident that occurs in the *aftermath* of the alleged persecution. Neither application attempted to describe the medical attention petitioners received, and in describing why they believed they were entitled to asylum, there is no reason petitioners would have described receiving medicine from a clinic.

In Shao's case, the IJ concluded that during testimony Shao "explained to this Court in detail that a doctor saw him, examined him, and provided medical treatment and even had a follow-up visit or appointment," but the information was omitted from Shao's application and Shao's father's letter. Shao Cert. Admin. R. 76. The IJ characterized this discrepancy as a "troubling significant inconsistency" and "significant omission" because it "implicates a

- 24 -

degree of alleged harm that he suffered which is a central element of his claim."

*Id.* at 75-76. Our review of the record suggests that the discrepancy was not so stark. Shao disclosed in his initial application that his mother helped salve his wounds. During testimony, Shao twice testified, in response to the IJ's questions, that he visited the clinic simply to procure the medicine his mother applied. *Id.* at 146 ("Q. And what did this private small clinic do for you? A. He provide me with those medical liquid and my mother helped me to put on."); *id.* at 147 ("Q. Sir, can you explain to me why both your statements . . . don't mention you going to see this doctor in your village for treatment? A. At the time [I] got released, my parents and I just went to this small clinic and took, and grabbed some medicines and then went back."). Although he did affirmatively respond to the IJ's question about whether he sought "follow-up treatment," nothing in Shao's short response -- that the doctor "just check[ed] on me, what happened to those areas," *id.* at 146 -- indicates that the treatment was particularly significant. A fairer reading of Shao's testimony is that, in response to questioning, he provided additional detail regarding how his family procured the medicine his mother used to treat his injuries.

Similarly, in Gao's case, the IJ faulted Gao because he testified that his parents took him to a clinic immediately after his release, but neither his application nor his mother's letter disclosed that his injuries required medical attention. Gao Cert. Admin. R. 64-65. Again, our review of the record suggests that the discrepancy was not so serious. On cross-examination, Gao described his clinic visit as follows: "They just took a look at me, gave me some liquid medication, gave me some medication and that was that." *Id.* at 176. Nothing in Gao's response and the short colloquy regarding his clinic visit indicates that the treatment was particularly significant.

We also note that petitioners' testimony regarding their clinic visits was relatively short -- accounting for less than three pages of transcript in Shao's case, and about one page in Gao's case -- and was elicited through cross-examination (in Gao's case) and IJ questioning (in Shao's case). It was not as though Gao or Shao volunteered the information on direct examination in an effort to falsely buttress their claims through testimony. *Cf. Zamanov v. Holder*, 649 F.3d 969, 974 (9th Cir. 2011) (upholding adverse credibility determination where applicant's "supplemental declaration and his testimony before the IJ tell a much different -- and more compelling -- story of persecution than his initial

application and testimony before the asylum officer"). We hesitate to suggest that petitioners' initial submissions must detail not only the persecution they faced, but also the *aftermath* of the alleged persecution, lest they be found not credible.

Third, in both cases, when considering the "record as a whole," *Tu Lin*, 446 F.3d at 402, there was corroborating evidence of petitioners' claims that they were severely beaten by police. In Shao's case, Shao's sister, brother, and father all submitted letters substantiating his claim that he was beaten in police detention. In Gao's case, Gao's friend -- the same friend in whose house Gao was praying when the police arrived -- submitted a letter corroborating Gao's account of what happened in the house and at the police station.

Finally, as far as the omissions in Gao's mother's letter and Shao's father's letter regarding the clinic visits, in both cases petitioners were asked to speculate about the state of mind of the letters' authors. Although an omission by a third party may form a basis for an adverse credibility determination, *see Xiu Xia Lin*, 534 F.3d at 167, under these circumstances -- where a third party's omission creates no *inconsistency* with an applicant's own statements -- an applicant's failure to explain third-party omissions is less probative of credibility

than an applicant's failure to explain his or her own omissions. *Cf. id.* (relying on omission in third-party friend's letter where "the failure of [applicant's] friend to mention that the friend was in hiding from Chinese authorities contradicted [applicant's] testimony that her friend feared further persecution").

We therefore conclude that, under the totality of circumstances, the omissions regarding Gao's and Shao's clinic visits warranted little, if any, weight.[4]

### B.    *Remaining Issues in Shao's Case*

In Shao's case, the IJ also relied on the omission of the fact that Shao was arrested in a letter from Shao's pastor, who was aware of Shao's arrest. The IJ did not accept Shao's explanation that he submitted the letter only to prove his church attendance and baptism. Although the BIA concluded that the omission "would not be sufficient by itself to support the adverse credibility determination, . . . it [could] be cited" in light of other discrepancies. Shao Cert. Admin. R. 5.

---

[4]    We do not suggest that omissions regarding medical treatment can never be the basis of an adverse credibility determination. We emphasize simply that such omissions must be evaluated on a case-by-case basis and weighed in light of the totality of the circumstances.

We are not persuaded that reliance on this omission was appropriate. Although the document at issue is handwritten, it is plainly titled a "Certificate," and includes no details other than Shao's date of his birth, the date he "accepted Jesus Christ as Savior," and the date he was baptized. *Id.* at 230. The absence of Shao's arrest in this document is unremarkable given the purpose for which Shao offered the document, and it is not apparent to us why the IJ would expect a discussion of Shao's arrest in the certificate. Moreover, although an IJ is not compelled to accept a petitioner's explanation, an IJ is required to "engage or evaluate" the explanation. *Diallo*, 445 F.3d at 629 (quoting *Latifi*, 430 F.3d at 105). The IJ's summary conclusion that "the Court does not accept [Shao's] explanation" did not meet this requirement. Shao Cert. Admin. R. 77.

We recognize that other aspects of Shao's testimony -- such as his vacillating answers regarding how many times he reported to the police and his demeanor during that exchange -- support the IJ's adverse credibility finding. But because we cannot confidently predict that the IJ would have adhered to her determination absent the other errors we have identified, remand is warranted.

C.    *Remaining Issues in Gao's Case*

In Gao's case, the IJ also relied on other inconsistencies and omissions that do not support the adverse credibility determination. The BIA correctly rejected the IJ's improper reliance on the purported discrepancy in Gao's statements regarding the number of times he was interrogated. We also note that Gao's failure to mention in his application that his interrogation room had a "small window," a fact he later recounted in testimony, was an utterly trivial omission that had no bearing on Gao's credibility. *See Latifi*, 430 F.3d at 105; *accord Shrestha*, 590 F.3d at 1044; *Kadia*, 501 F.3d at 821.

We recognize that other discrepancies support the IJ's adverse credibility finding. For example, Gao's mother mentions in her letter that, upon hearing that Gao was arrested, she was "afraid that [her] son would be beaten by the police." Gao Cert. Admin. R. 251. She does not, however, mention that he was *in fact* beaten and injured, although she discusses other post-arrest events. But because we cannot confidently predict that the IJ would have adhered to his determination absent the errors we have identified -- especially as the IJ commented that he reached the adverse credibility determination "with some reluctance," *id.* at 64 -- remand is warranted.

\*      \*      \*

Omissions need not go to the heart of a claim to be considered in adverse credibility determinations, but they must still be weighed in light of the totality of the circumstances and in the context of the record as a whole. In deciding on the appropriate weight to afford an omission, IJs must distinguish between (1) omissions that arise merely because an applicant's oral testimony is more detailed than his or her written application, and (2) omissions that tend to show that an applicant has fabricated his or her claim. In light of the foregoing, we conclude that a remand is appropriate in both cases to allow the BIA -- "or the IJ, if that is the most appropriate decision-maker in the first instance," *Mahmood v. Holder*, 570 F.3d 466, 471 (2d Cir. 2009) -- to afford the omissions discussed above their appropriate weight when evaluating petitioners' credibility.

## *CONCLUSION*

For the reasons set forth above, we **GRANT** the petitions, **VACATE** the decisions of the BIA, and **REMAND** the cases to the BIA for further proceedings consistent with this opinion. As we have completed our review, Gao's pending motion for a stay of removal in this petition is **DENIED** as moot.

- 31 -