Rattu v. Barr

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of May, two thousand twenty.

PRESENT:
> JOHN M. WALKER, JR.,
> GERARD E. LYNCH,
> RICHARD J. SULLIVAN,
> *Circuit Judges.*

———————————————————————

SUNY RATTU,
> *Petitioner*,

v.                                                                18-447

WILLIAM P. BARR, UNITED STATES
ATTORNEY GENERAL,
> *Respondent*.

———————————————————————

FOR PETITIONER:                    Visuvanathan Rudrakumaran, New York, NY
                                   (Richard W. Chen, New York, NY, *on the brief*).

FOR RESPONDENT:                    Enitan O. Otunla, Trial Attorney, Office of
                                   Immigration Litigation, Washington, DC
                                   (Derek C. Julius, Assistant Director, Office of
                                   Immigration Litigation, Washington, DC,
                                   Joseph H. Hunt, Assistant Attorney General,
                                   Department of Justice, Washington, DC, *on the
                                   brief*).

UPON DUE CONSIDERATION of this petition for review of a Board of

Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED,

AND DECREED that the petition for review is GRANTED.

Petitioner Suny Rattu, a native and citizen of India, seeks review of a

January 18, 2018, decision of the BIA affirming an April 7, 2017, decision of an

Immigration Judge ("IJ") denying asylum, withholding of removal, and relief

under the Convention Against Torture ("CAT"). We assume the parties'

familiarity with the underlying facts and procedural history of the case.

Under the circumstances of this case, we review both the IJ and BIA

opinions "for the sake of completeness." *Wangchuck v. Dep't of Homeland Security*,

448 F.3d 524, 528 (2d Cir. 2006). We review the agency's adverse credibility

findings "under the substantial evidence standard, which requires that [the

findings] be supported by reasonable, substantial and probative evidence in the

record when considered as a whole." *Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d

2

Cir. 2018) (internal quotation marks omitted). Accordingly, we consider whether the adverse credibility determination is warranted under the totality of the circumstances and assess whether the agency provided "specific, cogent reasons" for its determination that "bear a legitimate nexus to the finding." *Id.* at 77 (internal quotation marks omitted); *see Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 167 (2d Cir. 2008).

Here, the IJ found Rattu not credible for three reasons: (1) Rattu testified on cross-examination that he was afraid for his life as early as 2011, three years earlier than indicated in previous statements; (2) Rattu stated in his asylum application that he went into hiding with his grandparents but admitted at his hearing that his grandparents were deceased; and (3) Rattu's birth certificate incorrectly lists his sex as female. The IJ further held that no evidence in the record rehabilitated Rattu's testimony about his earlier fear and that Rattu had failed to adequately corroborate that aspect of his claim. For the reasons explained below, we find that the agency erred in relying on Rattu's statements about his earlier fear, his supposed lack of corroborating evidence, and the error on the birth certificate to support its credibility finding.

With respect to the first point, the IJ found that Rattu attempted to add a

new aspect of his claim on cross-examination when he indicated for the first time that he was casually involved with the Akali Dal Mann Party ("Mann Party"), and was afraid for his life, as early as 2011. In Rattu's declaration and on direct examination, Rattu did not mention this earlier fear, instead starting his testimony with his decision to formally join the Mann Party in 2014 before describing the two attacks he suffered after becoming a party member. The IJ took this omission to show that Rattu was attempting to bolster his claim on cross-examination by increasing the time period in which he claimed to be living in fear.

We see no indication that Rattu was attempting to strengthen his claim in this way. The relevant testimony was elicited during the course of questioning as to why Rattu obtained a passport in 2011. When the government attorney directly asked Rattu if he was afraid for his life at that point, Rattu said that he was afraid because he had seen his friends attacked at Mann Party events. However, Rattu went on to expressly *disavow* the idea that this fear had led him to get the passport, explaining that his family had been encouraging him to go abroad to find work. In subsequent questioning, Rattu further downplayed his involvement in the Mann Party during this period, testifying that he didn't know much about them at that time, and that his involvement was limited to joining friends at their

4

events when he was invited to do so. He never sought to rely on events or affiliations prior to 2014 as a basis for his asylum claim, nor did he use his asserted fear in 2011 to explain away his earlier interest in emigrating, instead forthrightly admitting that his interest at that time was not the result of any fear he might have felt. There is no indication that Rattu was attempting to expand his claim to encompass his pre-2014 fear and there is thus no apparent support for the IJ's conclusion that Rattu was embellishing his claim on cross-examination. *See Hong Fei Gao*, 891 F.3d at 78–81.

The IJ's error on this point also undermines her corroboration analysis. The IJ held that Rattu had failed to adequately corroborate his pre-2014 activities. But Rattu is only required to corroborate the claim he is actually making, and his claim below was based on the harm he suffered after he became a full party member in 2014. *See Liu v. Holder*, 575 F.3d 193, 196 (2d Cir. 2009). Thus, the IJ erred in faulting Rattu for not providing corroborating evidence regarding his earlier activities.

The second point cited by the IJ was the error on Rattu's birth certificate, which incorrectly identifies Rattu as female. Rattu's birth certificate is a dual-language document, with its contents first written in another language (the record

5

does not disclose which language; Rattu's counsel speculated at oral argument that it was possibly Punjabi) and then in English. The English identification of Rattu's sex is incorrect but there is no evidence in the record about what the document says in its first language. While the IJ takes issue with Rattu's statement that he saw no error in the document, Rattu testified that he speaks very little English, which seems an entirely reasonable explanation as to why he might have overlooked the English-language error. Further, we note that neither the IJ nor the BIA suggested that Rattu had failed to adequately establish his identity or that the birth certificate is a forged or falsified document. *See Niang v. Mukasey*, 511 F.3d 138, 146 (2d Cir. 2007).

Though the IJ's finding that the birth certificate contained an inaccuracy is correct, the inaccuracy casts no particular light on Rattu's credibility. First, the IJ made no finding, and the government has not even contended, that the document is not in fact Rattu's actual birth certificate; accordingly, there is no indication that he is responsible for any inaccuracy. Second, given Rattu's limited English proficiency, there is no basis to infer that Rattu noticed or understood the inaccuracy; indeed, even if the inaccuracy appears in the original language as well, it is unclear whether Rattu would have noticed the error, or that he had any

reason to seek issuance of a corrected certificate. Third, absent any dispute about the authenticity of the document or about Rattu's actual identity, and considering the utter irrelevance of the contents of the birth certificate to the truth of his claim of past persecution, Rattu had nothing to gain by presenting a document that recorded his sex inaccurately. Thus, we conclude that the error "has no tendency to suggest [Rattu] fabricated his . . . claim." *Hong Fei Gao*, 891 F.3d at 77.

The IJ's final basis for her determination was that Rattu offered inconsistent testimony as to where he hid prior to fleeing the country. Rattu's declaration stated that he was living *with* his grandparents. However, in Rattu's credible fear interview, in his direct testimony, and on cross-examination, he stated that he went to live *at his grandparent's house*, with no mention of his grandparents actually being present. On cross-examination, Rattu explained that his grandparents were deceased, and he stayed with his uncle in his grandparents' former home. Though Rattu suggests that this inconsistency was the result of a translation error or cultural misunderstanding, the IJ was not "compelled" to accept this explanation. *Gurung v. Barr*, 929 F.3d 56, 61 (2d Cir. 2019) (internal quotation marks and emphasis omitted). The IJ therefore did not err in rejecting Rattu's explanations and relying on this inconsistency in her credibility

7

assessment.

"Where an IJ relies on erroneous bases to reach an adverse credibility determination, and we cannot confidently predict that the IJ would reach the same conclusion in the absence of these deficiencies, the IJ's adverse credibility determination cannot stand." *Hong Fei Gao*, 891 F.3d at 77 (internal quotation marks omitted). Here, we conclude that the IJ erred in her analysis of two of the three bases for her determination, as well as in her corroboration finding. "Because we cannot confidently predict that absent these errors the IJ would have adhered to [her] determination, a remand is warranted." *Kone v. Holder*, 596 F.3d 141, 151 (2d Cir. 2010) (footnote omitted).[1]

1 Our dissenting colleague suggests that in holding the IJ's conclusion is not supported by the record, we engage in impermissible factfinding and overstep our deferential standard of review. We emphasize that our decision is limited to finding that there is no support in the record, as it stands now, for the IJ's determination that Rattu was trying to bolster his claim on cross-examination. *See Hong Fei Gao*, 891 F.3d at 76. The substantial evidence standard neither requires nor permits us to affirm any basis on which the IJ justified her finding, no matter how illogical or unsupported in the record. *See Pavlova v. INS*, 441 F.3d 82, 88 (2d Cir. 2006) (noting that notwithstanding the deference given to credibility determinations, "we will vacate the IJ's decision if he has not applied the law correctly or supported his findings with record evidence"). The substantial evidence standard is indeed forgiving, and unsurprisingly we have upheld the agency's credibility findings in many hundreds of cases. Even here, we do not conclude that the record compels a finding that Rattu is credible. We conclude only that we are unable to say with confidence that the IJ would adhere to her adverse credibility determination if she were to reconsider Rattu's case free of the

For the foregoing reasons, we **GRANT** the petition for review, **VACATE** the BIA's decision, and **REMAND** for further proceedings consistent with this order. On remand the agency may take additional evidence, and re-assess Rattu's credibility based on a full record.

RICHARD J. SULLIVAN, *Circuit Judge*, dissenting:

I respectfully dissent. The finding of an Immigration Judge ("IJ") that an applicant is not credible is reviewed "under the substantial evidence standard." *Lianping Li v. Lynch*, 839 F.3d 144, 149 (2d Cir. 2016). In applying that standard, "[w]e afford particular deference to an IJ's credibility determinations and defer to them unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Id.* (internal quotation marks omitted). In this case, I am persuaded that the inconsistencies and irregularities across Rattu's testimony and documentary evidence amply

---

errors we identify in this decision. Such remands are hardly unheard of. *See, e.g.*, *Gurung*, 929 F.3d at 60-61; *Zheng v. Mukasey*, 552 F.3d 277, 287-89 (2d Cir. 2009); *Lin v. U.S. Dep't of Justice*, 453 F.3d 99, 110-11 (2d Cir. 2006); *see also Wanglin Li v. Barr*, 784 F. App'x 39, 40-41 (2d Cir. 2019); *Lin Zheng v. Sessions*, 728 F. App'x 56, 58-59 (2d Cir. 2018); *Rong Wu v. Holder*, 483 F. App'x 651, 652 (2d Cir. 2012); *Kone v. Holder*, 419 F. App'x 83, 85 (2d Cir. 2011).

supported the IJ's finding that Rattu was not credible, and that the IJ was not "plainly" unreasonable in reaching that determination.

For starters, the IJ was wholly justified in relying on Rattu's evolving and contradictory statements concerning the relatives with whom he hid while avoiding persecution in India. Throughout the asylum process, Rattu made repeated references to staying "with his grandparents" and hiding at his "grandparents' house," Certified Administrative Record at 63, 329, and made no mention of hiding with his uncle until after his application was well under way. His explanation for the discrepancy – a translation error – was implausible on its face and was explored, and rejected, by the IJ after questioning the interpreter. Obviously, the asylum process is designed to enable the agency to assess an applicant's fear of persecution and to ascertain the identities of witnesses who might corroborate the applicant's story. The identities of the persons with whom one was living at the time of the alleged persecution are clearly relevant to that process; the identities of the deceased relatives who were the original title holders to the property where one was hiding are clearly not. Rattu said that he stayed "with his grandparents," *id.* at 63; when it turned out that they were deceased at the time of Rattu's flight, he raised for the first time a story of staying with his uncle in the house that was previously owned by his grandparents. This was a concerning modification that the IJ was free to scrutinize and ultimately reject.

Rattu's revelation during cross-examination that he was active in party politics and feared for his life years earlier than previously disclosed likewise supported the IJ's adverse credibility finding. Though the majority has identified a plausible explanation for Rattu's testimony, the inference the IJ drew – that Rattu was attempting to bolster his application with newly-manufactured and colorful accounts of past political activity and persecution – is equally plausible. As we are not acting as factfinders at this stage, these competing inferences are insufficient to undercut the IJ's conclusion that Rattu was not credible.

Finally, the error in Rattu's birth certificate, while not independently sufficient to sink his case, was yet another factor that the IJ was free to consider in assessing Rattu's demeanor and truthfulness. To my mind, it was not improper for the IJ to acknowledge and accord some weight to Rattu's professed ignorance of such a glaring error in the identity document that he himself procured and submitted in support of his application.

In short, the majority asks the agency to take another look at Rattu's credibility simply because the majority has identified possible benign explanations for Rattu's discordant testimony. Because that is not consistent with

the applicable standard of review, and because the IJ's adverse credibility ruling

on this record was well-supported, I would deny Rattu's petition.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court