Misirbiev v. Barr

BIA
Sichel, IJ
A200 736 767

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of October, two thousand twenty.

PRESENT:
> PIERRE N. LEVAL,
> GERARD E. LYNCH,
> SUSAN L. CARNEY,
> *Circuit Judges.*

_____

LEMI MISIRBIEV,
> *Petitioner,*

v.                                              18-265
                                                NAC

WILLIAM P. BARR, UNITED STATES
ATTORNEY GENERAL,
> *Respondent.*

_____

FOR PETITIONER:         Tatiana S. Aristova, Plainsboro, NJ.

FOR RESPONDENT:         Joseph H. Hunt, Assistant Attorney General; Lyle D. Jentzer, Senior Counsel for National Security; Daniel I. Smulow, Senior Counsel

for National Security, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Lemi Misirbiev, a native of the former Soviet Union and a citizen of Russia, seeks review of a January 3, 2018, decision of the BIA affirming a July 7, 2016, decision of an Immigration Judge ("IJ") denying Misirbiev's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Misirbiev,* No. A 200 736 767 (B.I.A. Jan. 3, 2018), *aff'g* No. A 200 736 767 (Immig. Ct. N.Y. City July 7, 2016). He also seeks review of a January 3, 2018 decision of the BIA denying reopening and reconsideration. *In re Misirbiev,* No. A 200 736 767 (B.I.A. Jan. 3, 2018). We assume the parties' familiarity with the underlying facts and procedural history in this case.

We have reviewed the IJ's decision as modified by the BIA. *See Xue Hong Yang v. U.S. Dep't of Justice*, 426 F.3d

520, 522 (2d Cir. 2005). The standards of review are well established. *See* 8 U.S.C. § 1252(b)(4); *Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018) (reviewing adverse credibility determination for substantial evidence); *Debeatham v. Holder*, 602 F.3d 481, 484 (2d Cir. 2010) (reviewing denial of reconsideration for abuse of discretion); *Jian Hui Shao v. Mukasey*, 546 F.3d 138, 168–69 (2d Cir. 2008) (reviewing denial of reopening for abuse of discretion and related country conditions findings for substantial evidence).

Adverse Credibility Determination

The agency may, considering the totality of the circumstances, base a credibility finding on an asylum applicant's "demeanor, candor, or responsiveness," the plausibility of his account, and inconsistencies in his statements or between his statements and other evidence, without regard to whether they go "to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii). "We defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility

ruling." *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 167 (2d Cir. 2008); *accord Hong Fei Gao*, 891 F.3d at 76. The agency's adverse credibility determination is supported by substantial evidence.

First, the agency reasonably relied on the fact that Misirbiev's testimony omitted any mention of the December 2005 incident, described at length in his application, during which he allegedly was kidnapped by the police, threatened with the death of his family members, beaten to unconsciousness with steel rods, chained to a radiator for hours in freezing temperatures, moved to a second location where he was again beaten and threatened with death, and then left on the outskirts of town, after which he paid his former captors a large sum of money.[1] *See Xiu Xia Lin*, 534 F.3d at 166 n.3 ("A lacuna in an applicant's testimony . . . can serve as a proper basis for an adverse credibility determination."). Misirbiev's application included numerous allegations of past persecution, but he addressed in his testimony only the last two incidents during which he claimed

---

1 We note that the IJ describes this incident as occurring in October 2005, CAR 462, but the Petitioner's application describes this incident as occurring in December 2005. *See* CAR 1224.

4

men came to his office, beat him, and took money from his safe.

Misirbiev argues that the omission of the December 2005 incident does not impugn his credibility because the IJ asked that he limit the scope of his testimony, he was not specifically asked to describe this incident, and the omission therefore reflected only "the IJ's own failure to inquire." Petitioner's Br. 14. But the IJ only requested that Misirbiev limit his testimony in light of portions of the affidavit predating Misirbiev's birth and agreed with counsel that it would be appropriate to narrow his testimony "to some of the latest samples of his torture and persecution," not to the single incident to which Misirbiev testified. CAR 518. Misirbiev is correct that he was not directly asked about the October 2005 incident; however, he was asked generally why he had applied for asylum. Moreover, Misirbiev had the burden to prove eligibility for relief and to present evidence "without prompting from the IJ." *Chuilu Liu v. Holder*, 575 F.3d 193, 198 (2d Cir. 2009) (discussing an applicant's burden to present corroborating evidence). And the December 2005 incident, which included the most

5

extreme allegations of violence that Misirbiev recounted in his application, and involved more serious abuse than the incident to which he did testify, is one that a witness would "reasonably have been expected to disclose" in his testimony. *Hong Fei Gao*, 891 F.3d at 79.

Second, the agency reasonably concluded that Misirbiev's testimony regarding hostages held by the Chechen militia at a hospital in January 1996 was inconsistent with other evidence, implausible, vague, and nonresponsive. Misirbiev confirmed that he was at the hospital as a militia commander, but repeatedly gave nonresponsive answers when asked whether he was aware that the militia used hostages as human shields, and he made contradictory claims about whether civilians were held by force, both at the hospital and when the fighters attempted to return to Chechnya. His assertion that the civilians were not taken against their will when the Chechen militia left the hospital contradicted a human rights report in the record, which stated that militants "used a group of 160 hostages as human shields." CAR 933. Given this evidence, the IJ did not err in concluding that Misirbiev was "trying to obfuscate" and "minimize his culpability" during

6

this portion of his testimony. CAR 462-63. Contrary to Misirbiev's argument on appeal, the agency was not required to attribute this testimony to Misirbiev's "nervousness." *See Jin Chen v. U.S. Dep't of Justice*, 426 F.3d 104, 113 (2d Cir. 2005) (recognizing that "the IJ's ability to observe the witness's demeanor places her in the best position to evaluate whether apparent problems in the witness's testimony suggest a lack of credibility or, rather, can be attributed to an innocent cause such as difficulty understanding the question").

Third, having questioned Misirbiev's credibility, the agency reasonably relied on his failure to rehabilitate his testimony with reliable corroborating evidence. "An applicant's failure to corroborate his or her testimony may bear on credibility, because the absence of corroboration in general makes an applicant unable to rehabilitate testimony that has already been called into question." *Biao Yang v. Gonzales*, 496 F.3d 268, 273 (2d Cir. 2007). The agency did not err in assigning diminished weight to letters submitted by Misirbiev's family and friends because Misirbiev did not adequately demonstrate how these letters came into his

7

possession. He presented only copies of the letters to the agency, and he claimed that he had received them by email. The agency reasonably questioned Misirbiev's claim that he relied on email because he believed that physical letters were screened, as he testified that email was also screened, and some of the authors were located outside Russia (in Austria and France). Contrary to Misirbiev's argument, he was provided an opportunity to explain the omitted evidence regarding the letters' origins. The agency was not required to credit Misirbiev's explanation that he had not saved the email chains showing how he had received the letters, particularly as some of the letters were obtained after the IJ questioned the origins of the letters already in the record and Misirbiev's counsel committed to submitting emails documenting those origins. *Shunfu Li v. Mukasey*, 529 F.3d 141, 149 (2d Cir. 2008) (affording IJs "considerable flexibility in determining the authenticity of . . . documents from the totality of the evidence and in using documents found to be authentic in making an overall assessment of the credibility of a petitioner's testimony and, ultimately, of [his] persecution claim"). The remaining documents did not

8

corroborate his allegations of persecution. Although Misirbiev argues that the agency failed to adequately consider the country conditions evidence, he does not identify any particular evidence in the record that the agency should have addressed, and "we presume that [the agency] has taken into account all of the evidence before [it], unless the record compellingly suggests otherwise." *Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 336 n.17 (2d Cir. 2006).[2]

Misirbiev's remaining arguments are meritless. Misirbiev argues that the BIA should have referred his appeal to a three-member panel, but he does not identify which of the six bases for such a referral enumerated in 8 C.F.R. § 1003.1(e)(6) is present here, and none is apparent. He also asserts in passing that he is entitled to relief based on his Chechen ethnicity and his recent Facebook postings critical of the government. The Facebook postings were not

---

[2] Misirbiev argues that the agency should have considered an expert's report that he submitted after his hearing, but he does not challenge the agency's conclusion that this report (and accompanying country conditions evidence) was not part of the record because it was filed after his hearing and closing arguments.

raised before the IJ and are therefore not a proper basis to challenge the IJ's ruling. Misirbiev does not argue that the country conditions evidence establishes a pattern or practice of persecution of ethnic Chechens in Russia, and he has thus waived this issue. *See* 8 C.F.R. § 1208.13(b)(2)(iii)(A) (an applicant may qualify for asylum by proving "that there is a pattern or practice in his or her country . . . of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion"); *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

In sum, given the significant omissions from Misirbiev's testimony, his vague, nonresponsive, and implausible responses to questioning, and the lack of reliable corroborating evidence, the adverse credibility determination is supported by substantial evidence. *See* 8 U.S.C. § 1158(b)(1)(B)(iii); *Xiu Xia Lin*, 534 F.3d at 163–64. This determination is dispositive of all forms of relief because Misirbiev's claims for asylum, withholding of removal, and

10

CAT relief all relied on the same factual predicate. *See Paul v. Gonzales*, 444 F.3d 148, 156 (2d Cir. 2006).

Motion for Reconsideration

The BIA did not abuse its discretion in denying Misirbiev's motion for reconsideration. A motion for reconsideration must specify errors of fact or law in the BIA's decision and be supported with pertinent authority, and the BIA does not abuse its discretion by denying a motion to reconsider that merely repeats arguments that the BIA had previously rejected. *See* 8 C.F.R. § 1003.2(b)(1); *Jin Ming Liu v. Gonzales*, 439 F.3d 109, 111 (2d Cir. 2006); *Ke Zhen Zhao v. U.S. Dep't of Justice*, 265 F.3d 83, 90 (2d Cir. 2001). Misirbiev's motion largely reiterated prior arguments, and the remainder of the motion failed to specify errors of fact or law in the agency's decision.

Motion to Reopen

Finally, even if Misirbiev's motion to reopen were considered timely filed, the agency did not abuse its discretion in denying reopening because Misirbiev did not establish prima facie eligibility for asylum, withholding of removal, or CAT relief. *INS v. Abudu*, 485 U.S. 94, 104 (1988)

11

(the BIA may deny a motion to reopen if "the movant has not established a prima facie case for the underlying substantive relief sought"). To demonstrate prima facie eligibility for asylum, a movant "must show a realistic chance that []he will be able to obtain such relief." *Jian Hui Shao*, 546 F.3d at 168 (internal quotation marks omitted).

Misirbiev did not carry the "heavy burden" to make this showing. *Id.* (quoting *Abudu*, 485 U.S. at 110). "[I]n order to establish eligibility for relief based exclusively on activities undertaken after his arrival in the United States, an alien must make some showing that authorities in his country of nationality are (1) aware of his activities or (2) likely to become aware of his activities." *Hongsheng Leng v. Mukasey*, 528 F.3d 135, 138 (2d Cir. 2008). As the BIA noted, Misirbiev alleges that he learned that the Russian government knew of his posts and threatened him only through his wife. But the letters from Misirbiev's family are vague—they do not specify, among other things, when authorities spoke to them or the nature of their threats. Further, his wife's letter, dated June 17, 2017, suggests Misirbiev had published multiple dissenting Facebook posts by that time,

12

but only one of the two posts Misirbiev submitted is dated prior to June 17. And his brother's letter indicates that people other than Misirbiev's wife had been threatened—a significant fact that was omitted from Misirbiev's own statement. The record also lacked envelopes or other evidence explaining when and how Misirbiev obtained these letters. Misirbiev thus failed to establish a "reasonable chance" that the agency would conclude he was entitled to relief based on the Russian government's knowledge of his internet activity in the United States. *See Jian Hui Shao*, 546 F.3d at 168; *Hongsheng Leng*, 528 F.3d at 138.

Nor did Misirbiev show that the government would likely become aware of his Facebook posts and persecute him as a result. This claim, in essence that there is a pattern or practice of persecution of individuals who criticize the government online, was not supported because the country conditions evidence did not show systemic persecution. *See* 8 C.F.R. § 1208.13(b)(2)(iii)(A); *Mufied v. Mukasey*, 508 F.3d 88, 92 (2d Cir. 2007) (quoting *In re A-M-*, 23 I. & N. Dec. 737, 741 (BIA 2005)) (to prevail on a "pattern or practice" claim, an alien must demonstrate harm that is "so systemic or

13

pervasive as to amount to a pattern or practice of persecution"). The country conditions evidence reflected that at least five Russians were convicted of offenses related to material posted online, mostly pertaining to Russia's actions in Crimea, between mid-2014 and 2016. This is insufficient to show that the Russian government engages in "systemic or pervasive" abuse of people who have published social media posts critical of the government. *Mufied*, 508 F.3d at 92.

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

                                    FOR THE COURT:
                                    Catherine O'Hagan Wolfe,
                                    Clerk of Court

14