Zhao v. Garland

BIA
Loprest, IJ
A205 137 807

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of March, two thousand twenty-two.

PRESENT:
> DEBRA ANN LIVINGSTON,
> *Chief Judge*,
> MICHAEL H. PARK,
> STEVEN J. MENASHI,
> *Circuit Judges.*

_____

KAL ZHAO, AKA KAI ZHAO
> *Petitioner*,

v.                                      19-1687
                                        NAC

MERRICK B. GARLAND, UNITED
STATES ATTORNEY GENERAL,
> *Respondent.*

_____

FOR PETITIONER:          Yevgeny Samokhleb, Law Offices of
                         Yevgeny Samokhleb, P.C., New York,
                         NY.

FOR RESPONDENT:          Joseph H. Hunt, Assistant Attorney

General; Kohsei Ugumori, Senior Litigation Counsel; David Kim, Trial Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Kal Zhao ("Zhao"), a native and citizen of the People's Republic of China, seeks review of a May 31, 2019, decision of the BIA, affirming a January 9, 2018, decision of an Immigration Judge ("IJ") that denied Zhao's application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). *In re Kal Zhao*, No. A205 137 807 (B.I.A. May 31, 2019), *aff'g* No. A205 137 807 (Immig. Ct. N.Y. City Jan. 9, 2018). We assume the parties' familiarity with the underlying facts and procedural history.

"When the BIA agrees with an IJ's adverse credibility determination and adopts particular parts of the IJ's reasoning, we review the decisions of both the BIA and the IJ." *Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018)

(internal quotation marks omitted).  "Our review of the IJ's decision includes the portions not explicitly discussed by the BIA."  *Id.* (alterations and internal quotation marks omitted).

"[W]e review the agency's decision for substantial evidence and must defer to the factfinder's findings based on such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Singh v. Garland*, 11 F.4th 106, 113 (2d Cir. 2021) (internal quotation marks omitted). "The scope of review under the substantial evidence standard is exceedingly narrow, and we will uphold the BIA's decision unless the petitioner demonstrates that the record evidence was so compelling that no reasonable factfinder could fail to find him eligible for relief."  *Id*. (internal quotation marks omitted); *see* 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.").

Under the REAL ID Act of 2005, Pub L. No. 109-13, 119 Stat. 302 (2005), an asylum applicant bears the burden of satisfying the trier of fact that his testimony is credible. *See* 8 U.S.C. § 1158(b)(1)(B)(i), (ii).  In making an adverse

3

credibility determination, "an IJ may rely on *any* inconsistency or omission . . . as long as the 'totality of the circumstances' establishes that an asylum applicant is not credible." *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 167 (2d Cir. 2008) (quoting 8 U.S.C. § 1158(b)(1)(B)(iii)). The agency may base a credibility finding on an asylum applicant's "demeanor, candor, or responsiveness"; the "inherent plausibility" of his account; the consistency among his oral and written statements and other record evidence; and any internal inconsistencies, inaccuracies, or falsehoods within such statements, "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor." 8 U.S.C. § 1158(b)(1)(B)(iii). "We defer . . . to an IJ's credibility determination unless . . . it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Xiu Xia Lin*, 534 F.3d at 167.

In determining that Zhao's testimony was not credible, the IJ relied on four inconsistencies in Zhao's testimony and on his demeanor during his removal hearing. The inconsistencies and Zhao's demeanor demonstrate that the IJ's adverse credibility determination is supported by substantial

4

evidence.  *See Likai Gao v. Barr*, 968 F.3d 137, 145 n.8 (2d Cir. 2020) ("[E]ven a single inconsistency might preclude an alien from showing that an IJ was compelled to find him credible.  Multiple inconsistencies would so preclude even more forcefully.").

First, the IJ reasonably relied on an inconsistency between Zhao's testimony and an alert generated by the French Embassy in Thailand (the "Embassy Document").  The Embassy Document, which the Government submitted to the IJ, contains scanned images of a counterfeit passport bearing Zhao's name, likeness, and personal information and reveals that Zhao was intercepted at an airport in Bangkok, Thailand on April 6, 2011, while attempting to board a flight to Tehran, Iran. The Embassy Document directly contradicts Zhao's testimony that he left China for the first time in October 2011 when he traveled to the United States.[1]

_____

[1] The Government asserts that "[w]hen confronted with the embassy document, [Zhao's] only response was to deny that he was in Thailand in April 2011, rather than to attempt to reconcile the patent inconsistency with his prior testimony." Gov. Br. at 28.  Although Zhao was questioned at the June 2, 2016, removal hearing about the travel dates provided in the Embassy Document, it does not appear that he was confronted with the document itself at that proceeding.  In any event, Zhao does not argue that the IJ failed to afford him an

5

Second, the IJ properly relied on an inconsistency between Zhao's testimony and an affidavit submitted by his sister, Qing Zhao ("Qing"), on his behalf prior to the June 2, 2016, removal hearing. At that hearing, Zhao asserted that none of the witnesses present could corroborate his claim that he attended church in the United States from 2012 through 2013. In her affidavit, however, Qing (who was present at the hearing) attempts to corroborate Zhao's alleged church attendance by describing it in detail. Zhao's testimony that none of the witnesses at his hearing could corroborate his church attendance is therefore contradicted by Qing's presence at the hearing.

Third, the IJ properly concluded that Zhao's testimony contradicts the answers that he provided to an asylum officer during his November 21, 2011, credible fear interview. During that interview, Zhao claimed that he began attending an underground Christian house church in China on September 20, 2011, that he was arrested by Chinese authorities on September 22, and that he was then detained for two days before being

---

opportunity to contest the Embassy Document, and even if he had, he has "failed to preserve [this issue] for our review" because he never raised it before the BIA. *See Foster v. INS*, 376 F.3d 75, 78 (2d Cir. 2004).

released.  At the June 2, 2016, hearing, however, Zhao testified that he was arrested on September 20, 2011, and released on September 22.

Fourth, the IJ reasonably relied on inconsistencies between Zhao's testimony and the answers that he provided upon cross-examination.  Zhao testified that he attends a Christian church in Brooklyn every week and reads the Bible.  Upon cross-examination, however, Zhao demonstrated an extremely limited knowledge of the Bible.  He struggled, for example, to define the New Testament or to recall a single biblical story.

Fifth, the IJ properly determined that Zhao's documentary evidence fails to corroborate (and, at points, even undermines) his testimony.  For example, Zhao submitted several photos to corroborate his claim that he regularly attended a Christian church.  But while the photos were taken in 2010, Zhao testified that he did not convert to Christianity or begin attending church until September 2011.

Finally, the IJ reasonably relied on Zhao's demeanor to conclude that he was not credible. As the IJ explained:

> Zhao's demeanor -- specifically his lack of "candor or responsiveness," INA 208(b)(1)(B)(iii) -- also suggests he lacked credibility.  Zhao continually

7

> asked the interpreter to repeat the questions put to him and often paused lengthily before answering. His requests for repetition were sufficiently frequent for the Immigration Court to take note of them on the record. His pauses were most notable after he was confronted with the French Embassy's record. Like the behavior of his witness, Qiu, those aspects of Zhao's demeanor, when examined as a whole, went beyond the normal behavior associated with testifying.

Administrative Record at 99. Because the IJ's demeanor finding is grounded in the record, we defer to the IJ's finding. *See Jin Chen v. U.S. Dep't of Justice*, 426 F.3d 104, 113 (2d Cir. 2005) ("We give particular deference to . . . the adjudicator's observation of the applicant's demeanor, in recognition of the fact that the IJ's ability to observe the witness's demeanor places her in the best position to evaluate whether apparent problems in the witness's testimony suggest a lack of credibility.").

For the reasons set forth above, the IJ's determination that Zhao was not credible is supported by substantial evidence in the record. That determination is dispositive of all three of Zhao's claims — for asylum, for withholding of removal, and for protection under the CAT — because they are based on the same factual predicate: namely, that Zhao is a practicing Christian who fled China to avoid persecution

based on his faith. *See Hong Fei Gao*, 891 F.3d at 76 ("Where the same factual predicate underlies a petitioner's claims for asylum, withholding of removal, and protection under the CAT, an adverse credibility determination forecloses all three forms of relief."); *Paul v. Gonzales*, 444 F.3d 148, 156 (2d Cir. 2006) ("[W]here a withholding claim is based on the very fact, or set of facts, that the IJ found not to be credible, . . . we have routinely decided . . . that a withholding of removal claim was meritless since the alien's asylum claim had failed on adverse credibility grounds."); *id.* at 157 ("[A] petition for CAT relief may fail because of an adverse credibility ruling rendered in the asylum context where the factual basis for the alien's CAT claim was the same as that rejected in his asylum petition."). Accordingly, we do not consider the IJ's alternative holdings that Zhao failed to establish that his life or freedom would be threatened or that he would be tortured if he were removed to China.

For the foregoing reasons, the petition for review is DENIED.  All pending motions and applications are DENIED and stays VACATED.

<div style="margin-left: 40%;">

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

</div>