Kumar-Pun v. Garland

BIA
Poczter, IJ
A209 164 889

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of May, two thousand twenty-three.

PRESENT:
>  JOSEPH F. BIANCO,
>  SARAH A. L. MERRIAM,
>  MARIA ARAÚJO KAHN,
>  *Circuit Judges.*

_____

RAJAN KUMAR-PUN,
>  *Petitioner*,

>  v.                                                    21-6133
>                                                        NAC

MERRICK B. GARLAND, UNITED
STATES ATTORNEY GENERAL,
>  *Respondent.*

_____

**FOR PETITIONER:**     Shiva Prasad Khanal, Esq., New York, NY.

**FOR RESPONDENT:**     Brian Boynton, Acting Assistant Attorney General; Derek C. Julius, Assistant Director; Erik R. Quick, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, D.C.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is GRANTED.

Petitioner Rajan Kumar-Pun, a native and citizen of Nepal, seeks review of a March 1, 2021 decision of the BIA, affirming a September 7, 2018 decision of an Immigration Judge ("IJ"), which denied his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Rajan Kumar-Pun*, No. A209 164 889 (B.I.A. Mar. 1, 2021), *aff'g* No. A209 164 889 (Immigr. Ct. N.Y. City Sept. 7, 2018). We assume the parties' familiarity with the underlying facts and procedural history.

We have reviewed both the BIA's and IJ's opinions. *See Yun-Zui Guan v. Gonzales*, 432 F.3d 391, 394 (2d Cir. 2005). We review factual findings, including an adverse credibility determination, "under the substantial evidence standard," *Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018), and "the administrative

2

findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B).

"Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on . . . the consistency between the applicant's or witness's written and oral statements . . . , the internal consistency of each such statement, the consistency of such statements with other evidence of record . . . and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor." 8 U.S.C. § 1158(b)(1)(B)(iii). Kumar-Pun alleged that Maoists confronted him on several occasions between 2009 and 2016, threatened to kill him, and attacked him and his family because of his support for the Nepali Congress Party. We remand in light of, as discussed below, the lack of direct inconsistency between Kumar-Pun's written statement and the hearing testimony.

First, the IJ found inconsistencies between Kumar-Pun's written statement and testimony regarding whether he had received death threats. The IJ's conclusion that Kumar-Pun's written statement indicated that the Maoists threatened to kill him in 2009, 2011, and 2016, but that his testimony, particularly

3

on direct examination, "did not indicate that they threatened to kill him or threatened him with death" is not supported by the record. Certified Administrative Record ("CAR") at 91. The IJ appears to fault Kumar-Pun for writing that he was threatened with death in 2011, but then testifying to the actions that constituted the threats, i.e., the IJ appears to have interpreted the written statement as alleging that only *verbal* death threats were made, while Kumar-Pun testified to *physical* threats and attacks. However, there is no actual inconsistency because the written application does not specify that the threats were verbal. As to the 2009 incident, Kumar-Pun did not explicitly mention death threats on direct examination; however, he discussed being threatened by Maoists in 2009, and that he feared they would kill him. In addition, on cross-examination he clarified that the Maoists threatened to kill him. Regarding the 2016 incident, Kumar-Pun did not testify that the Maoists threatened to kill him; instead, he stated that the Maoists demanded that he donate money to the party, that he told them to come back in a few days even though he had no intention of giving them the money, and that he did so to "save himself" and because he "wanted to escape." CAR at 141–42. The IJ's reliance on Kumar-Pun's failure to use the words "threatened to kill" or "threatened with death" when otherwise describing the incidents

4

consistently with his written statement was error because "trivial differences in the wording of statements describing the same event are not sufficient to create inconsistencies." *Gurung v. Barr*, 929 F.3d 56, 61 (2d Cir. 2019). To the extent that the IJ found discrepancies in the way that Kumar-Pun described the 2009 and 2016 incidents at the hearing, the discrepancies are more properly characterized as omissions than as inconsistencies because he did not "describe[] the same incidents of persecution differently" or directly contradict his earlier statements. *Hong Fei Gao*, 891 F.3d at 78.

Second, the IJ found Kumar-Pun's written statement, which indicated that the Maoists stole money from his house in 2011, demanded that he donate to the party, and promised to return for the donation, inconsistent with his direct testimony about that incident. The IJ mischaracterized Kumar-Pun's testimony in part, because Kumar-Pun did testify that the Maoists promised to return in five days. As with the prior inconsistency finding, there was no contradiction: Kumar-Pun testified consistently as to the important aspects of the 2011 incident on direct examination, and when confronted with his failure to mention the donation demand or missing money, he testified consistently with his written statement. While there is a difference in the level of detail in the statements, there is no

5

inconsistency. *See Hong Fei Gao*, 891 F.3d at 82 (no support for adverse credibility determination where "trivial omission that had no bearing on [applicant's] credibility"). As to the missing money, the IJ erred in finding this omission significant because Kumar-Pun testified consistently regarding the more serious parts of the 2011 incident, and omissions related to the aftermath of an incident of persecution are not as relevant to credibility as omissions or inconsistencies about the persecution itself. *See Hong Fei Gao*, 891 F.3d at 79–80; *see also Singh v. Garland*, 6 F.4th 418, 428 (2d Cir. 2021) (explaining that "the less importance the omitted fact would have had to the objective of the statement from which it was omitted, the less the two statements can be seen as inconsistent or as supplying a basis for doubting veracity").

Third, the IJ found inconsistency in Kumar-Pun's testimony regarding where he went after the 2011 attack, finding that he testified that he went to Saudi Arabia, but that his written statement said he first went to Kathmandu. However, although he omitted the intervening weeks in Kathmandu from his testimony, he was not inconsistent about leaving Nepal or when he left. Moreover, even if appropriately deemed an omission, it is not a strong indication of falsity given that it relates to the aftermath, not the persecution itself. *Cf. Hong Fei Gao*, 891 F.3d at

6

80–81 ("We hesitate to suggest that petitioners' initial submissions must detail not only persecution they faced, but also the aftermath of the alleged persecution, lest they be found not credible.").

Fourth, the IJ determined that Kumar-Pun's explanations as to why he did not become a member of the Nepali Congress Party until 2007, even though he had been a supporter since 2002, were internally inconsistent. When asked to explain, Kumar-Pun first testified that that he "did not have any idea" about becoming a party member and that he became a member when his friend told him about it, and later testified that he knew that he could become a member, but that it was not the right time and that he feared Maoists. CAR at 148–49. Even accepting the IJ's characterization of inconsistency, the IJ mischaracterized the discrepancy as material because Kumar-Pun was consistent that he had supported the party since 2002 and became a member in 2007, and none of his other allegations relied on differentiating between supporters and official members of the Nepali Congress Party. *See Malets v. Garland*, 66 F.4th 49, 56 (2d Cir. 2023) (holding that "the mischaracterization of an irrelevant matter as 'central' and 'material' weighs in favor of rejecting such a finding").

We remand because, as set forth above, the agency's inconsistency findings

did not identify any direct contradictions between or within Kumar-Pun's written and oral statements. *See Gurung*, 929 F.3d at 62 ("When the agency has denied asylum and related relief on credibility grounds, we can (and we will) affirm only if (a) the agency offered a clearly independent and sufficient ground for its ruling, one that is not affected by any erroneous adverse credibility findings, or (b) the evidentiary record includes statements that are so inconsistent that we can be confident that the agency would not accept any kind of explanation."). The agency's additional finding that the lack of reliable corroboration further undermined Kumar-Pun's credibility is not alone sufficient to support the adverse credibility determination. *See Chuilu Liu v. Holder*, 575 F.3d 193, 198 n.5 (2d Cir. 2009) (holding that "while a failure to corroborate can suffice, without more, to support a finding that an alien has not met his burden of proof, a failure to corroborate cannot, without more, support an adverse credibility determination").

For the foregoing reasons, the petition for review is GRANTED, the BIA's decision is VACATED, and the case is REMANDED for further proceedings. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

8