*Niroula v. Garland*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of October, two thousand twenty-four.

PRESENT: GUIDO CALABRESI,
JOSÉ A. CABRANES,
RICHARD J. SULLIVAN,
*Circuit Judges.*

_____

YOGESH NIROULA,

   *Petitioner*,

   v.            No. 21-6073

MERRICK B. GARLAND, United States
Attorney General,

   *Respondent*.

_____

For Petitioner:               Dilli Raj Bhatta, Esq., Bhatta Law & Associates, New York, NY.

For Respondent:           Brian M. Boynton, Principal Deputy Assistant Attorney General; Anna Juarez, Senior Litigation Counsel; Kathryn McKinney, Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

**UPON DUE CONSIDERATION** of this petition for review of a Board of Immigration Appeals ("BIA") decision, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the petition for review is **DENIED**.

Petitioner Yogesh Niroula, a native and citizen of Nepal, seeks review of a January 14, 2021 decision of the BIA affirming a May 22, 2018 decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We assume the parties' familiarity with the underlying facts and procedural history.

"Where, as here, the BIA adopts and affirms the IJ's decision, we review the two decisions in tandem." *Ojo v. Garland*, 25 F.4th 152, 159 (2d Cir. 2022) (alterations and internal quotation marks omitted). The IJ's factual findings are reviewed under the substantial evidence standard. *See Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018); *Lecaj v. Holder*, 616 F.3d 111, 116 (2d Cir. 2010)

(applying the substantial evidence standard to agency determinations of changes in country conditions). As we have previously explained, this standard "is exceedingly narrow" and affords "the IJ significant deference." *Bhagtana v. Garland*, 93 F.4th 592, 594 (2d Cir. 2023) (internal quotation marks omitted). We therefore accept the IJ's factual findings as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

When an asylum applicant has been deemed to have suffered from past persecution, the presumption of a well-founded fear of future persecution "may be rebutted if an ... immigration judge" finds that (1) "[t]here has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality" or (2) "[t]he applicant could avoid future persecution by relocating to another part of the applicant's country of nationality." 8 C.F.R. § 1208.13(b)(1). Here, there was substantial evidence in the record to support the IJ's determination that there had been a fundamental change in circumstances such that Niroula no longer has a well-founded fear of persecution in Nepal.

The IJ found that the political climate and human rights situation in Nepal

3

had dramatically improved since Niroula was attacked by members of the Communist Party of Nepal (the "Maoists") in 2007, fled to the United States in 2008, returned for a brief period in 2011, and fled again later that year. Citing multiple State Department reports, the IJ explained that from 1996 to 2006 – one year prior to the 2007 attack on Niroula – Nepal had faced a ten-year-long Maoist-led insurgency that resulted in "[a]t least 13,000" deaths, including those of the Nepalese royal family. Certified Admin. Record at 30. But the IJ also noted that, over the next twelve years, the country transitioned from a monarchy to a democratic republic and underwent significant changes. During that time, the former Maoist insurgents joined the political mainstream, and the country conducted both national and local elections that observers described as "credible," "free, fair, and peaceful, with a high voter turnout." *Id*. at 31, 256 (internal quotation marks omitted). Moreover, as the IJ explicitly pointed out, Prachanda, a former Maoist rebel who was elected as prime minister, voluntarily handed over power to Sher Bahadur Deuba, a long-time member of the Nepali Congress Party ("NCP"), which is the political party to which Niroula belongs and is a rival party to the Maoists. The IJ also noted that the new government prosecuted cases arising from the violent conduct that took place during the civil war.

4

In the face of this evidence, Niroula argues that the IJ overlooked the fact that Niroula was attacked after the Maoist insurgency had ended and that "[t]he country conditions overwhelmingly demonstrate [that] . . . the Maoists have gained control of the government" and have "continued their violent attacks against their political enemies." Niroula Br. at 9. But Niroula's disagreements with the IJ's conclusions are not enough to compel a remand. Given the abundant evidence in the record of the intervening developments in Nepal, we cannot say that a "reasonable adjudicator would be compelled to conclude" that Niroula has a well-founded fear of facing persecution in Nepal. 8 U.S.C. § 1252(b)(4)(B).

Niroula argues in the alternative that, even if Nepal's country conditions have changed, "the IJ failed to consider evidence that tends to show [Niroula] still faces an individualized threat of future persecution." Niroula Br. at 26 (internal quotation marks omitted). Niroula specifically points to the fact that a Maoist splinter group, the Biplav faction, sent his father an extortion letter in 2016 that included a targeted threat towards Niroula were his parents not to pay. But the IJ expressly considered the 2016 letter, noted that "the Nepali government has taken steps to control Biplav and his followers," and explained that the police have arrested multiple leaders of the Biplav group. Certified Admin. Record at 32.

5

Under the substantial evidence standard, we may "not supplant the agency's findings merely by identifying alternative findings that could [also] be supported by substantial evidence." *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992). In light of the record developed below, we cannot say that the agency erred in concluding that the conditions in Nepal have changed to the point that Niroula no longer has a well-founded fear of persecution.

Given the evidence in the record concerning Nepal's changed circumstances, Niroula's remaining claims for withholding of removal and CAT relief are easily resolved. Because we find that Niroula does not have a well-founded fear of future persecution, it follows that the agency did not err in denying his asylum, withholding of removal, and CAT claims, since all three of those claims were based on the same factual predicate. *See Paul v. Gonzales*, 444 F.3d 148, 156–57 (2d Cir. 2006); *see also Lecaj*, 616 F.3d at 119–20 (declining to review the agency's denial of withholding of removal and CAT relief because the petitioner failed to demonstrate the lower likelihood of persecution required for a grant of asylum). We therefore deny those claims as well.

*       *       *

6

We have considered Niroula's remaining arguments and find them to be without merit.   Accordingly, we **DENY** the petition for review.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court