22-6030
*Singh v. Garland*

BIA
Bither, IJ
A205 585 885

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of April, two thousand twenty-four.

PRESENT:
　　　　　MICHAEL H. PARK,
　　　　　EUNICE C. LEE,
　　　　　SARAH A. L. MERRIAM,
　　　　　　　*Circuit Judges.*
_____

SUKHPREET SINGH,
　　　　　*Petitioner,*

　　　　v.　　　　　　　　　　　　　　　　　22-6030

　　　　　　　　　　　　　　　　　　　　　NAC

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,
　　　　　*Respondent.*
_____

FOR PETITIONER:　　　　　Heena Arora, Law Offices of Heena Arora, P.C., Richmond Hill, NY.

**FOR RESPONDENT:** Brian Boynton, Principal Deputy Assistant Attorney General; M. Jocelyn Lopez Wright, Senior Litigation Counsel; Giovanni B. Di Maggio, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Sukhpreet Singh, a native and citizen of India, seeks review of a December 17, 2021 decision of the BIA denying his motion to terminate and affirming an April 25, 2018 decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Sukhpreet Singh,* No. A 205 585 885 (B.I.A. Dec. 17, 2021), *aff'g* No. A 205 585 885 (Immigr. Ct. N.Y.C. Apr. 25, 2018). We assume the parties' familiarity with the underlying facts and procedural history.

We have reviewed the IJ's decision as modified and supplemented by the BIA. *See Xue Hong Yang v. U.S. Dep't of Just.*, 426 F.3d 520, 522 (2d Cir. 2005); Yan *Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). We review the agency's factual findings for substantial evidence, and we review questions of law and the application of law to fact de novo. *Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d

Cir. 2018). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

**I.    Agency Jurisdiction**

As a preliminary matter, Singh's argument that the agency lacked jurisdiction over his removal proceedings because his notice to appear ("NTA") did not include a hearing date and time is foreclosed by our case law.   In *Pereira v. Sessions*, the Supreme Court held that an NTA that fails to specify a time or place of hearing as required by 8 U.S.C. § 1229(a)(1)(G)(i) does not stop the accrual of continuous presence required for cancellation of removal (a form of relief that Singh has not sought) as set forth in 8 U.S.C. § 1229b(d)(1).   138 S. Ct. 2105, 2113–14 (2018).   The Supreme Court clarified in *Niz-Chavez v. Garland* that a subsequent hearing notice does not cure the defective NTA in that context.   141 S. Ct. 1474, 1486 (2021).   But *Niz-Chavez* and *Pereira* are limited to the stop-time rule for cancellation of removal and are "not properly read to void *jurisdiction* in cases in which an NTA omits a hearing time or place."   *Banegas Gomez v. Barr*, 922 F.3d 101, 110 (2d Cir. 2019); *see also Chery v. Garland*, 16 F.4th 980, 987 (2d Cir. 2021) ("*Banegas Gomez* remains good law even after the Supreme Court's opinion in *Niz-*

*Chavez*" because, "[a]s with *Pereira*, *Niz-Chavez* focused only on the stop-time rule . . . and did not address the effect of a defective NTA on an IJ's jurisdiction."). "[A]n NTA that omits information regarding the time and date of the initial removal hearing is nevertheless adequate to vest jurisdiction . . . so long as a notice of hearing specifying this information is later sent to the alien." *Banegas Gomez*, 922 F.3d at 112. Here, although Singh's NTA omitted the date and time of his hearing, he does not dispute that he received a subsequent hearing notice containing this information, and he appeared at his hearing. The agency therefore had jurisdiction. *See Chery*, 16 F.4th at 986–87; *Banegas Gomez*, 922 F.3d at 112.

**II. Credibility**

"Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on . . . the consistency between the applicant's . . . written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, . . . and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim,

4

or any other relevant factor." 8 U.S.C. § 1158(b)(1)(B)(iii). "We defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 167 (2d Cir. 2008); *accord Hong Fei Gao*, 891 F.3d at 76. Substantial evidence supports the adverse credibility determination here.

First, the agency reasonably relied on Singh's inconsistent testimony about when he left India. *See* 8 U.S.C. § 1158(b)(1)(B)(iii). In his written statement and application, Singh alleged that members of an opposing political party assaulted him in June 2012 and again in November 2012, and he went into hiding in Delhi in late November 2012 before leaving India in January 2013. But at his hearing, despite testifying that he was assaulted in June and November 2012, Singh repeatedly stated that he left India in February 2012—even after his attorney pointed out multiple times that this would mean he left before the assaults—before changing his testimony to state that he first left in February 2013.

Singh argues that the agency erred in relying on this inconsistency because it is trivial, he corrected his mistake, and he had difficulty understanding questions. Under some circumstances, we have found that minor discrepancies

5

in dates are not strongly probative of credibility. *See, e.g.*, *Diallo v. INS*, 232 F.3d 279, 288 (2d Cir. 2000) (observing that "minor and isolated" discrepancies "need not be fatal to credibility"). Still, the agency may consider even minor inconsistencies in evaluating credibility, "as long as the 'totality of the circumstances' establishes that [the] asylum applicant is not credible." *Xiu Xia Lin*, 534 F.3d at 167. The inconsistency here is not minor, because it rendered the timeline of Singh's account impossible, and a significant portion of his direct examination focused on it.

The agency was not required to accept Singh's explanation that he initially misspoke because he repeated the error multiple times, and even after changing his testimony to say he left in 2013, he reverted to the 2012 date. *See Majidi v. Gonzales*, 430 F.3d 77, 80 (2d Cir. 2005) ("A petitioner must do more than offer a plausible explanation for his inconsistent statements to secure relief; he must demonstrate that a reasonable fact-finder would be *compelled* to credit his testimony." (quotation marks omitted)). Given that repetition, Singh's failure to correct his testimony despite multiple opportunities to do so, and his attorney's efforts to point out the error, the IJ reasonably concluded that Singh was attempting to follow a memorized script rather than testifying from his own

6

experiences. *See id.* at 81 n.1 (noting that a "fact-finder who assesses testimony together with witness demeanor is in the best position to discern . . . whether a witness . . . was . . . attempting truthfully to recount what he recalled of key events or struggling to remember the lines of a carefully crafted script" (quotation marks omitted)). Notably, Singh's attorney pointed out the inconsistency six times before Singh corrected it.[1]

Second, the agency reasonably relied on Singh's omissions of death threats from his credible fear interview and written statement. During the interview, Singh stated that opposing party members had threatened him, and when asked about the contents of the threats, he said that they directed him to join their party or they would beat him; he did not mention a death threat. Singh's written statement describes his assailants threatening to kill him during only the first

---

[1] Singh's argument that he had difficulty understanding questions and that he was "young and alone," Petitioner's Br. at 18, is supported by citations to his credible fear interview, not his merits hearing; the questions at the hearing were straightforward and his responses that he left India in 2012 were unequivocal. *See Li Hua Lin v. U.S. Dep't of Just.*, 453 F.3d 99, 109 (2d Cir. 2006) (acknowledging that the IJ is "in the best position to evaluate whether apparent problems in the . . . testimony suggest a lack of credibility or, rather, can be attributed to an innocent cause such as difficulty understanding the question" (quotation marks omitted)). And Singh was 24 years old and represented by counsel at his hearing.

assault. But he testified that his assailants threatened to kill him during or immediately after both assaults.

Singh argues that the IJ improperly treated these omissions as "inconsistencies," that the omissions were not probative of credibility, and that the agency erred in relying on the interview record. However, the IJ used the term "omission" in discussing this testimony, and the BIA explained that this evidence would support the adverse credibility determination even if viewed as an omission rather than an inconsistency because the omission was neither minor nor collateral to his claim. The agency is entitled to consider omissions in evaluating credibility, although "[a] trivial . . . omission that has no tendency to suggest a petitioner fabricated his or her claim will not support an adverse credibility determination." *Hong Fei Gao*, 891 F.3d at 77. "[I]n assessing the probative value of the omission of certain facts, an IJ should consider whether those facts are ones that a credible petitioner would reasonably have been expected to disclose under the relevant circumstances." *Id.* at 78–79. Applying that standard, the omissions here were not trivial. At the interview, Singh offered that the party members made a less serious threat to beat him; therefore, it was reasonable to expect that he would have disclosed the more severe threat to kill him. And his choice to

8

mention one death threat in his written statement suggests that he understood its significance, and thus it was reasonable to expect him to have disclosed that he was threatened with death a second time.

The agency may consider statements made in a credible fear interview when assessing credibility so long as the "record of [the] credible fear interview displays the hallmarks of reliability." *Ming Zhang v. Holder*, 585 F.3d 715, 725 (2d Cir. 2009). Here, the record was reliable because despite lacking a verbatim transcript of the interview, it includes a typewritten list of questions posed and Singh's responses; the interview was conducted through an interpreter in Singh's native language; the record notes where Singh had difficulty understanding questions, but there is no indication that Singh misunderstood the question at issue here; the record reflects that the interviewer explained the purpose of the interview, the importance of testifying accurately, and that Singh could request clarifications; and the questioning was designed to elicit his claim, and included a specific question about the contents of the threats. *See id.*

Finally, Singh's argument that the agency should have found him credible because his testimony was detailed and consistent in other respects is without merit. Even "a single instance of false testimony may (if attributable to the

petitioner) infect the balance of the [petitioner's] uncorroborated or unauthenticated evidence." *Siewe v. Gonzales*, 480 F.3d 160, 170 (2d Cir. 2007).

In sum, given the inconsistency that undermined the entire timeline of events as well as the omissions, substantial evidence supports the adverse credibility determination. *See Likai Gao v. Barr*, 968 F.3d 137, 145 n.8 (2d Cir. 2020) ("[E]ven a single inconsistency might preclude an alien from showing that an IJ was compelled to find him credible."); *Hong Fei Gao*, 891 F.3d at 77–79; *Xiu Xia Lin*, 534 F.3d at 167. As the BIA found and Singh does not dispute, the credibility determination was dispositive of asylum, withholding of removal, and CAT relief because the three forms of relief were premised on the same facts.[2] *See Hong Fei Gao*, 891 F.3d at 76 ("Where the same factual predicate underlies a petitioner's

---

[2] Accordingly, we do not address the alternative grounds for denying CAT relief that Singh does not challenge here. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach."); *Debique v. Garland*, 58 F.4th 676, 684 (2d Cir. 2023) ("We consider abandoned any claims not adequately presented in an appellant's brief, and an appellant's failure to make legal or factual arguments constitutes abandonment." (quotation marks omitted)). Singh's challenges to the IJ's alternative grounds for denying asylum and withholding of removal are misplaced because the BIA expressly declined to address that aspect of the IJ's decision. *See Xue Hong Yang*, 426 F.3d at 522 (reviewing the IJ's decision "as modified by the BIA's decision"). Finally, his challenges to a purported corroboration finding are premised on a mischaracterization of the record; the agency did not find him credible and denied asylum on the ground that he failed to present available corroborating evidence. *See* Petitioner's Br. at 15–16.

claims for asylum, withholding of removal, and protection under the CAT, an adverse credibility determination forecloses all three forms of relief.").

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

                                        FOR THE COURT:
                                        Catherine O'Hagan Wolfe,
                                        Clerk of Court